80    APPELLATE COURTS OF ILLINOIS.

Hertz v. Chicago, Indiana & Southern R. R. Co., 154 Ill. App. 80.

## Benjamin F. Hertz, Appellee, v. Chicago, Indiana & Southern Railroad Company, Appellant.

### Gen. No. 5203.

1. COMMON CARRIERS—*duty to public in transporting dynamite, etc.* A common carrier has the right to receive and transport such dangerous articles of commerce as dynamite and naphtha and while there may be no contract relation between the carrier and a person injured as a result of an explosion, yet the carrier owes to those near enough its train to be affected by its manner of transporting these dangerous articles of commerce, the duty of using such care to avoid injury to others as would be used by an ordinarily prudent man engaged in such transportation under like circumstances. The more dangerous the articles transported the greater would be the vigilance of an ordinarily prudent man in exercising ordinary care.

2. COMMON CARRIERS—*when instruction as to obligations erroneous.* An instruction which makes a common carrier an insurer is erroneous if the sole obligation of the carrier in the case in question is only to exercise ordinary care.

3. PLEADING—*when defective declaration will not support recovery.* If a declaration defectively states a good cause of action it will not support a recovery if the defects are pointed out on the trial in apt time and if evidence offered not competent under the state of the declaration was in apt time properly objected to by the defendant.

4. EVIDENCE—*what part of res gestae.* An injury having resulted from an explosion, the consequences of such explosion to others than the plaintiff is competent, as part of the *res gestae*, as tending to show the destructive force of such explosion.

Action in case. Appeal from the Circuit Court of Kankakee county; the Hon. ALBERT O. MARSHALL, Judge, presiding. Heard in this court at the April term, 1909. Reversed and remanded. Opinion filed May 18, 1910.

W. R. HUNTER, for appellant; GLENNON, CARY, WALKER & HOWE, of counsel.

COOPER & HOBBIE and T. W. SHIELDS, for appellee.

Mr. Presiding Justice Dibell delivered the opinion of the court.

The Chicago, Indiana & Southern Railroad runs from South Bend, Indiana, to a point west of Streator, Illinois, passing through Kankakee city and county and through the northern part of the village of Reddick on the west side of said county. The Wabash Railroad runs in a northerly and southerly direction through the eastern part of the village of Reddick and crosses the Chicago, Indiana & Southern Railroad in that village. At the crossing is an interlocking device operated by a man in a tower. A freight train of the Chicago, Indiana & Southern Railroad, bound west, was wrecked just west of that crossing on June 4, 1907, and a carload of powder or dynamite in that train exploded, creating great havoc in the village. The bodies of people who were killed were found scattered over an adjoining farm in fragments. Fragments of cars were thrown long distances. A piece of iron weighing 175 pounds was found 80 rods away, and a piece of car wheel weighing 35 pounds was found three feet deep in the ground a mile and a half from the scene of the explosion. The concussion was felt many miles away. Much of the window glass in the village of Reddick was broken. Benjamin F. Hertz was a store keeper in a building facing east on a north and south street, about half a mile south of this crossing. He had chinaware, furniture, musical instruments and other goods in his store and plate glass windows in front. The plate glass windows were nearly all destroyed, the crockery, which occupied one side of the store, was mostly thrown to the floor, broken and ruined, and much damage was inflicted upon the furniture and musical instruments and upon the building itself. He brought this suit against the Chicago, Indiana & Southern Railroad Company to recover damages for said injuries, and had a verdict and a judgment for $415, from which the railroad company

appeals. The verdict was a moderate one for the injuries inflicted upon appellee by the explosion.

Each count of the declaration described the location and operation of the railroad, the existence of the village and the stores and residences and other buildings therein, the dangerous character of the explosives contained in said car and that they were capable, if exploded, of casting heavy articles long distances and breaking window glass and doing other like damage, and were capable of being easily ignited or exploded by fire, heat or concussion; and it described in detail appellee's store and stock of merchandise and the injury thereto by the explosion. The first count charged that appellant unlawfully and knowingly caused a carload of violent and dangerous explosives to be placed upon said railroad track near said village and within, to wit, 200 feet of where a fire was then and there burning, and that by reason of the placing of said explosives at said point on appellant's right of way and railroad track the same became and was a nuisance, and that said car of explosives, while so in the possession and control of appellant, ignited and exploded with great force, and injured and destroyed appellee's property. The second count charged that appellant negligently caused to be placed on its railroad track and right of way at a point half a mile distant from appellee's store a freight carload of dangerous explosives, the exact name of which explosives was to plaintiff unknown, and so negligently and wrongfully placed said car of explosives at such a point on its tracks and right of way that it was within a distance of, to wit, 200 feet of a fire, to wit: a burning car and a burning oil tank, and that by reason of said negligent placing of said car of explosives in such close proximity to said fire, the explosives became ignited and exploded with great force and violence, and the jar and concussion resulting from said explosion injured and destroyed plaintiff's property. The third count charged that appellant negligently and

wrongfully caused to be placed on its railroad tracks and right of way at a point near appellee's store, to wit, one half mile therefrom, a freight carload of dangerous and violent explosives which appellant permitted to be and remain upon its track and right of way, carelessly and negligently packed and carelessly and insufficiently protected and watched and carelessly and negligently in close proximity to large quantities of detonators and explosives, the exact name and character of which were to plaintiff unknown, but of great explosive power, and that by reason of said explosives being so carelessly packed, protected and watched, and placed in close proximity to said other explosives, the said dangerous and violent explosives became ignited and exploded with great violence, and the jar and concussion resulting from said explosion injured and destroyed plaintiff's property.

The west bound train in question consisted of two engines, fifty-two cars and a caboose. The loads, beginning at the engines and going back, were first, two cars of automobiles, then a coal car loaded with pipe, then five Union Tank Line cars loaded with naphtha, then a car of automobiles, a car of pipe, a car of soda ash, a car of paint, a car of cider, and then the carload of powder in question; there being five cars between the naphtha cars and the carload of powder, and thirty-eight cars behind the car of powder. There was no powder or oil or naphtha in the train back of the powder car. Counsel for each side say that this was Atlas powder; and Atlas powder was proved to be another name for dynamite; but it was billed as powder, and we find nothing in the evidence to show that it was Atlas powder or dynamite. We accept the admission of appellant's counsel that it was Atlas powder as true, but appellee seems to be in error in saying that the evidence shows that fact.

The substance of the evidence tending to show that this explosion was due to the negligence of appellant and its servants, beyond the general fact that the train

and the right of way and track and this car and the oil cars were in the possession and control of appellant, and that appellant knew the contents of the cars, was as follows. George Van Voorst testified that, at Union Hill, some four or five miles east of Reddick, he stood on the south side of this train as it went west and looked the train over and saw a peculiar movement of the wheels, "that the wheels turned a little as it went around" and he testified that a bent axle would cause a wabbling of the wheels. George Studley testified that he saw this train when it was about a mile east of the Wabash crossing, he then being about 25 rods south of the railroad; that he saw smoke on a oil tank about the last of the tank cars. William Grob, who was upon a road grader working on a north and south highway three quarters of a mile east of the Wabash crossing and fifty rods north of the railroad, testified that he saw fire coming from the boxing of the journal of one of the tank cars on the opposite side of the train from him, as the train crossed the north and south highway. Joe A. Johnson, towerman at the Wabash crossing, had gone south on the Wabash track 500 feet to put up a signal light. He said that he saw this train about a mile from the crossing; that he saw fire flickering out from under one of the oil tanks all the way from a point three quarters of a mile distant till it reached the crossing; and that about 1450 or 1460 feet east of the crossing the car that had the fire left the track. Melvin Cooley testified that he was some distance south of appellant's road at an elevator, and saw the train when it was about one quarter of a mile east of the Wabash crossing, and noticed smoke, and a blaze at times, from an oil tank, but he could not tell whether it was the tank which was on fire. R. D. Shelly testified that he was 80 or 90 rods south and west of the crossing; that he saw this train when it was 80 rods east of the Wabash crossing, and saw fire at the front truck of an oil tank car, and saw a

flame reaching up to the platform of the car; that when this tank car reached the crossing, it went up in the air and fell over on its side and then a big smoke and fire went up and the fire went up some 20 feet in the air, and that the fire also burned in the ditch where apparently oil ran down, and that this was the same oil car which he saw on fire 80 rods east of the Wabash crossing. Charles Shadrow testified that he was section foreman on a section extending from more than three and one-half miles east of Reddick to a quarter of a mile west of Reddick; that this train passed him and his section hands when he was about three and three-fourths miles east of Reddick; that as he came back to Reddick after this train passed, he saw marks on the ties beginning 1200 feet east of the Wabash crossing and extending continuously to the crossing, which marks were about eighteen inches inside of the north rail; that these marks were not there when he went over the tracks in the morning and that the marks looked as if something had been bumping up and down on the ties. Two of these were witnesses for appellant. The proof made it plain that this derailed car was the one which had a fire at one of the front journals on the south side of the car, and that the train remained connected till that derailed truck struck the Wabash crossing, when it broke loose from the train in front and went off to the south and went into the ditch a few car lengths west of that crossing; that several other cars behind it piled up in different directions and the carload of powder landed directly north of, and about 60 feet from, this burning oil tank, with its front end in the ditch; and that the fierce fire from the burning oil tank communicated with the car of powder and set it on fire, and that the explosion resulted therefrom.

Appellant proved that this train was carefully inspected in Indiana and again at Kankakee, and that it was in good condition after each of such inspections.

On the front engine was an engineer, a fireman and
the head brakeman. On the second engine was an en-
gineer, a fireman and an extra brakeman. At the
caboose was the rear brakeman, and in the cupola
upon the caboose sat the conductor. These trainmen
each testified that he looked over this train between
Union Hill and Reddick, some on one side only and
others on both sides. There was a curve each way
shortly west of Union Hill, and several of the train-
men testified that this gave them a special opportunity
to see the inside of the train while on the curve. They
each testified that they saw no smoke or fire, or in-
dication of any hot box, and no indication of the de-
railment till they reached the Wabash crossing. Sev-
eral people who were away from the train on the
south side thereof, testified that they saw the train
and saw no smoke or fire. The evidence therefore
was in irreconcilable conflict. All of the witnesses
who testified on this subject for appellee were disin-
terested, so far as this record shows. The trainmen
were interested in relieving themselves from any
blame. The other witnesses for appellant appear to
have been disinterested. It is impossible that we
should know on which side the truth lies. The jury
saw the witnesses and (unless the verdict was caused
by the sixth instruction, hereinafter mentioned) they
seem to have believed the witnesses for appellee.
The trial judge saw the witnesses and approved that
finding. In considering the facts we must there-
fore assume that the proof established that there was
a peculiar motion to a wheel on the south side of the
train at Union Hill; that, at a distance of a mile be-
fore the Wabash crossing was reached, there was a
hot box on the front end of an oil tank on the south
side and that both smoke and a blaze of flame were
coming from it, and that eighty rods before it reached
the crossing an observer could not tell whether it was
the journal or the oil tank itself that was burning;
that the front end of that tank became derailed some-

where from 1200 to 1460 feet east of the crossing, or about a quarter of a mile from the crossing; and that when that truck struck the Wabash crossing it broke the train in two, set the oil tank on fire and made a violent fire, and that in the wreck the powder car was derailed and thrown near the burning car and from it was ignited and exploded. The fact that the car in question was loaded with powder was known to the conductor, who had in his possession a waybill for that car showing that fact. The car had been shipped from the east and was consigned to Mexico. The wreck and the explosion were due, first, to a hot box on an oil tank car, showing smoke and flame for a distance of a mile from the crossing, and to the derailing of the front truck of that car, and to the failure of the men in charge of the train to discover these facts and stop or substantially reduce the speed of the train before the derailed truck reached the Wabash crossing, where the train going at the speed it then had must necessarily be wrecked, and to the fact that the carload of powder had been placed so near to the cars of naphtha that in the wreck it came up by the side of them. The train men testified that it was their duty to carefully look over each side of the train from time to time while they were running. If they had done so they must have discovered this smoke and flame from the journal of one of the oil cars. They must have known that such a flame, while perhaps practically harmless on other cars, would be very dangerous on a car of naphtha, and especially dangerous with a carload of powder or dynamite a short distance back. If they had seen this smoke and flame a mile away it is clear that they could have stopped or greatly reduced the speed of the train before the crossing was reached. The jury may have concluded that the derailment one quarter of a mile east of the Wabash crossing caused the tank car to swing to the south sufficiently so that it would have been observed by men carefully watching that side of the train, and

that the train could have been even then so materially checked in speed that the cars would not have piled up as they did and the car of powder would not have been fired. If this car of powder had been placed near the rear of the train and as far away as possible from those cars of naphtha, which is shown to be a highly inflammable and explosive fluid, or if the powder and the naphtha had not been placed in the same train, this explosion would not have occurred. The jury may well have concluded from the evidence that the circumstances which fired the car of oil and which placed the car of powder, so close to it as to explode it were due to the negligence of the men in charge of the train, and from their failure to properly discharge their important duties. This explosion happened some distance from the business part of a small village, but it might have occurred in the center of a crowded city, and in such a case the consequences would have been appalling. While we concede the right of a common carrier to receive and transport such dangerous articles of commerce as dynamite and naphtha, and while there was no contract relation between appellant and appellee, yet appellant owed to those near enough its train to be affected by its manner of transporting these dangerous articles of commerce the duty of using such care to avoid injury to others as would be used by an ordinarily careful and prudent man engaged in such transportation under like circumstances. The more dangerous the articles transported, the greater would be the vigilance of an ordinarily prudent man in exercising ordinary care. If appellant failed to exercise that degree of care which an ordinarily prudent man in charge of carloads of dynamite and naphtha would have exercised in their transportation over a railroad and through villages and towns, then it would be responsible for the results of such lack of due care. It will be remembered that this train and the railroad track were entirely in the

control of appellant. It could have transported these articles over its line in such a manner that no such explosion as this could have occurred.

Appellant, however, contends that it is not charged in the declaration with negligence in the running of the train, or with negligently failing to discover the hot box or the fire or the derailed car, or with negligence in placing the car of powder in a position so near the cars of naphtha, or with negligence in causing or permitting the cars of naphtha to be on fire. These contentions are well founded. The declaration treats the fire as properly on the right of way, or at least it does not charge that the fire was there by defendant's negligence. It charges defendant with maintaining a nuisance in having a carload of dynamite upon its road at all, and that defendant was negligent in placing the carload of dynamite so near a fire on the right of way and so near other explosives, and that the carload of dynamite was negligently packed, protected and watched. If these defects in the declaration were first suggested after verdict it may be the declaration would be held sufficient after verdict. But when the proof of the condition of the train and of the negligent operation and management of the train, and of the existence of fire or a hot box on the train before it reached Reddick and of the derailment of the car far east of the crossing, was being introduced by plaintiff, defendant repeatedly objected that there was no charge in the declaration under which such proof was admissible. These objections were overruled and defendant excepted. Defendant several times moved to exclude such evidence on the ground that it was not admissible under the declaration. These motions were denied and defendant excepted. In our opinion these objections were well taken. They were interposed in apt time. Plaintiff did not seek to meet the objections by asking leave to amend the declaration, but chose to abide by the case stated therein. The objections should have been sustained. By the refusal

to sustain these objections plaintiff was permitted to make an entirely different case against defendant from that with which it was charged in the declaration. This was reversible error committed before verdict, and therefore the rule cannot be applied that a declaration which defectively states a cause of action may be good after verdict under certain conditions.

Complaint is made of some rulings in admitting proof of the consequences of the explosion to others than appellee. It was competent to show the very great and destructive force of the explosion. Some of that proof may have been unnecessary, but it related to the character of the explosion and was part of the *res gestae* and we fail to see how the court could have kept it out. It did not injure appellant, for the jury awarded appellee somewhat less than the proof showed the amount of his actual damages to be.

Complaint is made of the action of the court in giving certain instructions for appellee. Some of these ought not to have been given. Two of them practically told the jury that appellant was not bound to transport this car of powder and these cars of naphtha. We are satisfied that it at least had a right to transport them. The statute of 1887, concerning the manufacture, transportation and sale of explosives, contained in the Criminal Code (Hurd's R. S. 1905, Chap. 38, par. 54h to 54n), recognizes the right to transport explosives in this state within certain restrictions. This was an interstate shipment and is not wholly governed by that statute, but in view of that statute we cannot say that the shipment was unlawful in this State. If appellant might lawfully receive this shipment, then the jury should not have been told that it had the right to refuse it. We are also of opinion that under the proof, the giving of the sixth instruction, requested by appellee, requires a reversal. That instruction was as follows:

"If the jury believe from the evidence that the defendant caused a large quantity of powder or other

explosives to be placed so near the premises of the plaintiff as to be liable to damage the same, if said powder or explosive should there explode, and that said large quantity of explosive powder did explode at said place while within defendant's possession, and that thereby plaintiff's building and contents on plaintiff's said premises were damaged, then the jury should find the defendant guilty.''

That instruction made appellant an insurer against such an injury, even if its lack of negligence was clearly established and even if the explosion was a pure accident. Appellant offered much evidence tending to show that it was free from negligence. This instruction virtually withdrew that evidence from the consideration of the jury. It directed a verdict, and therefore could not be cured by other instructions given for appellant inconsistent therewith.

The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*