Margarito CHAVEZ, Plaintiff,

v.

SOUTHERN PACIFIC TRANSPORTA-
TION CO., et al., Defendants.

Robert A. DURGIN et al., Plaintiffs,

v.

UNITED STATES of America et
al., Defendants.

Herman L. PERKINS et al., Plaintiffs,

v.

SOUTHERN PACIFIC RAILROAD CO.
et al., Defendants.

John BELCHE et al., Plaintiffs,

v.

UNITED STATES of America et
al., Defendants.

Doyle B. JAMES et al., Plaintiffs,

v.

UNITED STATES of America et
al., Defendants.

Leota F. ODLE et al., Plaintiffs,

v.

SOUTHERN PACIFIC RAILROAD CO.
et al., Defendants.

Oscar B. WILLIAMS et al., Plaintiffs,

v.

SOUTHERN PACIFIC RAILROAD CO.
et al., Defendants.

Pedro AYALA et al., Plaintiffs,

v.

UNITED STATES of America et
al., Defendants.

NATIONAL AMERICAN INSUR. CO. OF
OMAHA et al., Plaintiffs,

v.

UNITED STATES of America et
al., Defendants.

Civ. Nos. S–74–78, S–74–124, S–74–146, S–74–148, S–74–163, S–74–166, S–74–168, S–74–172 and S–74–632.

United States District Court,
E. D. California.

May 12, 1976.

Lloyd Hinkelman, Kronick, Moskovitz, Tiedemann & Girard, Sacramento, Cal., for Margarito Chavez.

James L. Mikacich, Sacramento, Cal., for Robert A. Durgin, et al.

George M. McClarrinon, Sacramento, Cal., for Herman Perkins, Doyle B. James, Leota Odle, Oscar Williams et al.

Jack C. Sevey, O'Connor, Sevey & Gessford, and Lloyd Hinkelman, Sacramento, Cal., for John Belche et al.

Gerald J. Adler, Crow, Lytle & Gilwee, Sacramento, Cal., for Pedro Ayala et al.

A. Kirk McKenzie, Long & Levit, San Francisco, Cal., for Nat. Am. Ins. Co. et al.

James R. Diepenbrock, Jack V. Lovell, Sacramento, Cal., for Southern Pacific.

A. Theodore Giattina, Asst. U. S. Atty., Sacramento, Cal., for U. S.

## OPINION

MacBRIDE, Chief Judge.

On April 28, 1973, approximately eighteen bomb loaded boxcars exploded in Southern Pacific Transportation Company's Antelope Yard in Roseville, California. These boxcars and bombs, both the property of the United States, were being hauled by the Southern Pacific Transportation Company (hereinafter Southern Pacific), under a contract with the Department of the Navy, from Hawthorne, Nevada, to Port Chicago, California. Plaintiffs in the above entitled cases seek to recover damages for personal injuries and property destruction allegedly caused by the Roseville explosions.

■ Southern Pacific has moved this court in the above entitled cases, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the plaintiffs' claims against Southern Pacific which are premised on a theory of strict liability for the miscarriage of an ultrahazardous activity. Although plaintiffs have not designated these strict liability claims in their complaints as state or federal in origin, the court will treat them as state claims since there is no judicially recognized federal common law or statute which would permit these plaintiffs to recover on an ultrahazardous activity theory.

■ Plaintiffs seek to bring their state claims within this court's jurisdiction either on the basis of diversity between the litigants (28 U.S.C. § 1332), or on the basis of the judicially created doctrine of pendent jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). *Erie Railroad Company v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires this court to apply the substantive law of the forum state when adjudicating state claims before it under its diversity jurisdiction:

"Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." 304 U.S. at 78, 58 S.Ct. at 822, 82 L.Ed. at 1194.

The rule of *Erie* applies with equal force to pendent state claims before the federal courts; and the law of the forum state must govern substantive issues. *Flexitized, Inc. v. National Flexitized Corp.,* 335 F.2d 774 (2nd Cir. 1964), *cert. denied* 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965); *Kristiansen v. John Mullins & Sons, Inc.,* 59 F.R.D. 99 (N.Y.1973); *Saylor v. Lindsley,* 302 F.Supp. 1174 (N.Y.1969); *Briskin v. Glickman,* 267 F.Supp. 600 (N.Y.1967); *Mintz v. Allen,* 254 F.Supp. 1012 (N.Y.1966). See also *Maternally Yours v. Your Maternity Shop,* 234 F.2d 538 (2nd Cir. 1956). Therefore, this court must apply California law in adjudicating Southern Pacific's motion to dismiss the plaintiffs' state strict liability claims.

■ While applying the law of the forum state, this court must also apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under California choice of law analysis, the forum always applies its own law; but where a litigant has timely invoked the law of a foreign state, a California court may look to the law of other jurisdictions for the appropriate rule to be applied in the case before it. *Hurtado v. Superior Court,* 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666 (1974). Since no party has invoked the law of any state other than that of California, this court must follow the substantive law of California.

California has adopted the rule that where one is engaged in an activity so dangerous as to be characterized "ultrahazardous," strict liability for damages resulting from such activity may befall the actor.

*Luthringer v. Moore,* 31 Cal.2d 489, 190 P.2d 1 (1948). Plaintiffs argue that Southern Pacific's conduct in carrying bombs constituted ultrahazardous activity, and that the railroad should be held strictly liable for all the damages caused by the explosions in Roseville, California.

Although California courts of appeal have not yet had occasion to carve such an exception, Southern Pacific argues that under California law a common carrier may not be held strictly liable for damages resulting from the carriage of explosives insofar as it has a duty to carry them, and that Southern Pacific may not be held strictly liable in the above entitled cases because it had a duty to carry the explosives which caused plaintiffs' injuries.[1] In rebuttal, the plaintiffs make the following arguments:[2]

(1) that California would not adopt the common carrier exception argued for by Southern Pacific;

(2) that the common carried exception should not absolve Southern Pacific because the bombs were effectively being stored in the Antelope Yard;

(3) that the common carrier exception should not absolve Southern Pacific from strict liability because common carriers have no duty under California or federal law to transport explosives; and

(4) that even if California adopted the common carrier exception, and there did exist a general common carrier duty to accept bombs for transportation, Southern Pacific may still be strictly liable if it had no duty to accept for shipment the bombs which exploded in Roseville.[3]

Having found that the plaintiff must prevail on their first argument noted above, for the reasons set forth below, this court does not reach the merits of plaintiffs' other contentions.

In adjudicating this motion to dismiss, the court begins with the proposition that it must ascertain and apply the existing law of California, and that it must not predict that California may change its law and then apply this court's "notion of what that change might or ought to be." *Klingebiel v. Lockheed Aircraft Corp.,* 494 F.2d 345 (9th Cir. 1974). This court must follow the decisions of the Supreme Court of California, and where no such decisions exist, it must follow the decisions of the California Court of Appeals unless there is convincing evidence that the Supreme Court of California would decide differently. *Klingebiel v. Lockheed Aircraft Corp., supra.* When the question has not been decided in California, this court has the "doubtful privilege of 'first guessing' what the California courts might do." *Klingebiel v. Lockheed Aircraft Corp., supra* at 347.

Here, the court has the doubtful privilege of trying to "guess" whether the California courts would except Southern Pacific from the general standard of strict liability imposed on those engaged in ultrahazardous activity. While performing this task, the court will be guided by the words of Judge Johnsen in *Yoder v. Nu-Enamel Corp.,* 117 F.2d 488 (8th Cir. 1941):

"(W)here direct expression by an authorized state tribunal is lacking, it is the duty of the federal court, in dealing with matters of either common law or statute, to have regard for any persuasive date that is available, such as compelling inferences or logical implications from other related adjudications and considered pronouncements. The responsibility of the federal courts, in matters of local law, is not to formulate the legal mind of the state, but merely to ascertain and apply it. Any convincing manifestation of local law, having a clear root in judicial conscience and responsibility, whether resting in direct expression or obvious implication and inference, should accordingly

---

**1.** Southern Pacific has not argued that transporting bombs is not an ultrahazardous activity, and the court declines to rule on this question.

**2.** All of the plaintiffs did not advance all of these arguments.

**3.** Plaintiffs seek to raise a factual question with respect to Southern Pacific's duty to carry these bombs, which dispute cannot be resolved on a motion to dismiss.

be given appropriate heed." 117 F.2d at 489.

■ The notion that one engaged in unusual activity should be held strictly liable for resulting damages was popularized by the English case of *Rylands v. Fletcher,* 3 H. & C. 774 (1865), reversed L.R. 1 Ex. 265 (1866), affirmed L.R. 3 H.L. ·330 (1868). The rule of that case, as it has developed from subsequent English cases, has been succinctly stated by the late Professor Prosser to be:

> "(T)hat the defendant will be liable when he damages another by a thing or activity unduly dangerous and inappropriate to the place where it is maintained, in the light of the character of that place and its surroundings." W. Prosser, Law of Torts 508, § 78 (4th ed. 1971).

This theory of liability, now known as the Doctrine of *Rylands v. Fletcher,* was first utilized by the California judiciary in *Colton v. Onderdonk,* 69 Cal. 155, 10 P. 395 (1886). In *Colton,* the Supreme Court of California cited the *Rylands* case while holding that one engaged in blasting within a populated area should be held strictly liable for property damage caused by the explosions. 69 Cal. at 159, 10 P. 395. Later, this rule was extended to hold one engaged in urban blasting strictly liable for personal injuries caused by such blasting. *Munro v. Pacific Coast Dredging and Reclamation Co.,* 84 Cal. 515, 24 P. 303 (1890). The rationale for imposing strict liability in these cases emerges in *Green v. General Petroleum Corp.,* 205 Cal. 328, 270 P. 952 (1928). The Supreme Court in *Green* held that one engaged in oil-drilling in a residential area should be absolutely liable for damages resulting from an oil well "blow-out." The *Green* court explained:

> "Where one, in the conduct and maintenance of an enterprise lawful and proper in itself, deliberately does an act under known conditions, and, with knowledge that injury may result to another, proceeds, and injury is done to the other as the direct and proximate consequence of the act, however carefully done, the one who does the act and causes the injury

> should, in all fairness, be required to compensate the other for the damage done." 205 Cal. at 333–334, 270 P. at 955.

While the Supreme Court in *Green* did not expressly limit the above rule to cases where the enterprise was so dangerous as to be characterized as ultrahazardous, subsequent cases have read *Green* to include this limitation. See *Luthringer v. Moore, supra; Boyd v. White,* 128 Cal.App.2d 641, 276 P.2d 92 (1954); *Beck v. Bel Air Properties, Inc.,* 134 Cal.App.2d 834, 286 P.2d 503 (1955); *Gallin v. Poulou,* 140 Cal.App.2d 638, 295 P.2d 958 (1956). Thus, where one intentionally engages in an ultrahazardous enterprise and thereby exposes others to risks of harm which cannot be eliminated by the exercise of due care, fairness or abstract justice requires the precipitator of the risk to pay for resulting damages. Although the actor's conduct is not so unreasonable as to constitute negligence itself, it is sufficiently anti-social that, as between two innocents, the actor and not the injured should pay for mishaps.

This "fairness' rationale for imposing strict liability for the miscarriage ,of an ultrahazardous activity has been undergoing a metamorphosis. In the last Supreme Court of California decision involving this theory of liability, the court held a fumigator, licensed to use hydrocyanic acid to kill pests, strictly liable for personal injuries suffered when the lethal fumes seeped through the cracks of a building and found a victim. *Luthringer v. Moore, supra.* Although the court quoted at length from the Restatement of Torts (§§ 519, 520, 521, 523, and 524), it reached its decision in reliance on the case of *Green v. General Petroleum Corp., supra.* Further, while the court relied on the *Green* case, it justified the result by reference to an unspecified public policy:

> "(T)here can be no doubt that the case of *Green v. General Petroleum Corp., supra,* enunciated a principle of absolute liability which is applicable to the instant case. It is not significant that a property damage, as distinguished from a personal injury, was there involved. The important factor is that certain activities under certain conditions may be so hazardous to the

public generally, and of such relative infrequent occurrence, that it may well call for strict liability as the best public policy." 31 Cal.2d at 500, 190 P.2d at 8.

Notwithstanding Southern Pacific's protestations to the contrary, one public policy now recognized in California as justifying the imposition of strict liability for the miscarriage of an ultrahazardous activity is the social and economic desirability of distributing the losses, resulting from such activity, among the general public. *Smith v. Lockheed Propulsion Co.,* 247 Cal.App.2d 774, 56 Cal.Rptr. 128 (1967). The defendant in *Smith,* Lockheed Propulsion Co., under a contract with the United States Air Force, had been engaged in testing a solid fuel rocket motor by firing the motor nosedown while it was affixed to a test stand. Resulting tremors damaged nearby property belonging to the plaintiffs. After finding that this test firing involved the inherent risk of damage which could not be eliminated by the exercise of due care, the *Smith* court concluded:

"In these circumstances, public policy calls for strict liability. (*Luthringer v. Moore, supra,* 31 Cal.2d 489, 500, 190 P.2d 1; Rest., Torts, 520). There is no basis, either in reason or justice, for requiring the innocent neighboring landowner to bear the loss. Defendant, who is engaged in the enterprise for profit, is in a position best able to administer the loss so that it will ultimately be borne by the public. As Professor Prosser summarizes the rationale for the imposition of strict liability: 'The problem is dealt with as one of allocating a more or less inevitable loss to be charged against a complex and dangerous civilization, and liability is placed upon the party best able to shoulder it.' (Prosser, Law of Torts, (2d ed. 1955) page 318)."

By so stating the *Smith* court gave substance to the vague reference in *Luthringer* to the "best public policy," and provided California courts with a rationale other than the primitive appeal to "fairness."

The *Smith* court's justification of strict liability on a risk distribution theory is consistent with developments in other areas of California strict liability tort law. See *Escola v. Coca Cola Bottling Co.,* 24 Cal.2d 453, 150 P.2d 436 (1944) (concurring opinion); *Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963); *Price v. Shell Oil Co.,* 2 Cal.3d 245, 85 Cal.Rptr. 178, 466 P.2d 722 (1970). See also *Clark v. Gibbons,* 66 Cal.2d 399, 58 Cal.Rptr. 125, 426 P.2d 525 (1967) (concurring opinion); *Haft v. Lone Palm Hotel,* 3 Cal.3d 756, 91 Cal.Rptr. 745, 478 P.2d 465 (1970).

The first articulate use of the risk distribution rationale for imposing strict liability in California came in Justice Traynor's often cited concurring opinion in *Escola v. Coca Cola Bottling Co., supra,* an exploding bottle case. While the majority affirmed the plaintiff's judgment on a res ipsa loquitur theory, Justice Traynor reasoned that the same result should be reached on a theory of strict liability:

"Those who suffer injury from defective products are unprepared to meet its consequences. The cost of an injury and the loss of time or health may be an overwhelming misfortune to the person injured, and a needless one, for the risk of injury can be insured by the manufacturer and distributed among the public as a cost of doing business." 24 Cal.2d at 462, 150 P.2d at 441.

Justice Traynor firmly imprinted this reasoning into California strict liability law in the landmark case of *Greenman v. Yuba Power Products, Inc., supra,* in which California led other jurisdictions by finding that the products liability of a manufacturer was governed by the law of strict liability in tort, and not by the law of contract warranties. 59 Cal.2d at 63, 27 Cal.Rptr. 697, 377 P.2d 897. In support of this new proposition, Justice Traynor opined:

"We need not recanvass the reasons for imposing strict liability on the manufacturer. They have been fully articulated in the cases above. (See also 2 Harper and James, Torts, §§ 28.15–28.16, pp. 1569–1574; Prosser, Strict Liability to the Consumer, 69 Yale L.J. 1099; *Escola*

*v. Coca Cola Bottling Co.,* 24 Cal.2d 453, 461 (150 P.2d 436), concurring opinion.) The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves." 59 Cal.2d at 63, 27 Cal.Rptr. at 701, 377 P.2d at 901.

The Supreme Court of California, in the recent case of *Price v. Shell Oil Co., supra,* applied the risk distribution rationale to impose strict liability on the lessor of a truck for damages caused by defects existing in the truck when leased. Finding his inspiration in the *Greenman* and *Escola* cases, Justice Sullivan stated:

"Essentially the paramount policy to be promoted by the rule is the protection of otherwise defenseless victims of manufacturing defects and the spreading throughout society of the cost of compensating them. Thus the court in *Kriegler v. Eichler Homes, Inc.* (1969) 269 Cal. App.2d 224 (74 Cal.Rptr. 749), while noting that the rule of strict liability had theretofore been applied in California only to manufacturers, retailers and suppliers of personal property, found no difficulty in extending its application to builders engaged in the mass production and sale of homes." 2 Cal.3d at 251, 85 Cal.Rptr. at 181, 466 P.2d at 725.

As was found by the court in *Smith v. Lockheed Propulsion Co., supra,* the risk distribution justification for imposing strict liability is well suited to claims arising out of the conduct of ultrahazardous activity. The victims of such activity are defenseless. Due to the very nature of the activity, the losses suffered as a result of such activity are likely to be substantial—an "overwhelming misfortune to the person injured." 24 Cal.2d at 462, 150 P.2d at 441. Southern Pacific, like the manufacturer in *Greenman,* like the lessor in *Price,* and like Lockheed Propulsion Co. in *Smith,* is in a

position to "administer the loss so that it will ultimately be borne by the public." 247 Cal.App.2d at 785, 56 Cal.Rptr. at 137. By indirectly imposing liability on those that benefit from the dangerous activity, risk distribution benefits the social-economic body in two ways: (1) the adverse impact of any particular misfortune is lessened by spreading its cost over a greater population and over a larger time period, and (2) social and economic resources can be more efficiently allocated when the actual costs of goods and services (including the losses they entail) are reflected in their price to the consumer.[4] Both of these benefits may be achieved by subjecting Southern Pacific to strict liability.

Southern Pacific argues that the California courts would not subject it to strict liability on a risk distribution theory because they would find that common carriers may not be held absolutely liable for damages resulting from the transportation of bombs the carrier was bound to ship. In support, it cites a number of decisions in other jurisdictions which have held that a common carrier may not be held strictly liable. *Hertz v. Chicago, Indiana and Southern Railroad Co.,* 154 Ill.App. 80 (1910); *Actiesselskabet Ingrid v. Central Railroad Co. of New Jersey,* 216 F. 72 (2nd Cir. 1914); *Pope v. Edward M. Rude Carrier Corp.,* 138 W.Va. 218, 75 S.E.2d 584 (1953); *Christ Church Parish v. Cadet Chemical Corp.,* 25 Conn.Sup. 191, 199 A.2d 707 (1964).

Actually, the cases cited by Southern Pacific proceed on two theories. First, several decisions have found carriers to be excepted from the general rule of strict liability simply because they have the right to engage in the ultrahazardous activity.[5] In *Hertz v. Chicago, Indiana and Southern Railroad Co., supra,* the court found that where the railroad common carrier had a right under state law to transport dynamite, the railroad was not an insurer of losses suffered due to the transportation of the dynamite.

**4.** See Calabresi, Some Thoughts on Risk Distribution and the Law of Torts, 70 Yale L.J. 499 (1961).

**5.** While Southern Pacific has not advanced this argument, its citation of cases that do leads the court to consider its merit.

More recently in *Pope v. Edward M. Rude Carrier Corp., supra,* the Supreme Court of West Virginia held that a licensed contract carrier cannot be held strictly liable for damages resulting from the explosion of the carrier's dynamite laden truck because the carrier had the right to engage in that activity under the applicable laws: [6]

"(A) common carrier, in the transportation of high explosives by any proper type of conveyance in the absence of conduct which constitutes a nuisance, is not an insurer against or absolutely liable for damages caused by an explosion of such substances, but is liable only for such damages as are caused by its negligence. The principle just stated is applicable to a licensed contract carrier which, by virtue of an act of Congress and under regulations promulgated by the Interstate Commerce Commission, has the right to receive and transport high explosives by motor vehicle upon the public highways of a state in an interstate journey, as the agent of a manufacturer and shipper; and the defendant Rude, as such carrier, in the transportation of high explosives as the agent of a manufacturer and shipper of such explosives, is not an insurer against or absolutely liable for injuries caused by the explosion which occurred during such transportation, when it did not create or maintain a nuisance in such transportation, but is liable only for such injuries as are caused by its negligence." 75 S.E.2d at 597.

Neither the *Hertz* nor the *Pope* courts indicated why the carriers before them should be exempted from strict liability. However, both of these cases appear to fall within a category of cases described by the late Professor Prosser:

"There are certain conditions under which conduct which would otherwise result in strict liability may be privileged. The most obvious one is that of a sanction given by statutory authority, or by well defined local law. Within the limitations of the constitution, the legislature may authorize acts which involve a high degree of risk to others, and such authority amounts at least to a declaration that the acts are not anti-social, but desirable for the benefit of the community. In the absence of a provision expressly preserving the defendant's liability for any resulting damage, the courts have on occasion interpreted the statute as condoning the consequences in advance, and have refused to hold the defendant liable for doing what he was authorized to do. . . . The tendency in the later cases has been to avoid such a conclusion, by strict construction of the authorizing statute, or by finding an implied condition that there shall be liability, or that the manner of doing the work, or the resulting damage itself, are not authorized or necessary consequences of the sanctioned work." Prosser, *supra* at 524–525.

Following this logic, common carriers might be exempted from strict liability if some public authorization could be construed as a finding that the carriage of bombs is not anti-social, and as condoning the consequences in advance.

There is no direct authority indicating whether California courts would accept or reject an exemption for common carriers based on some form of public authorization. However, the results in a number of California ultrahazardous activity decisions, and consideration of the current rationales for imposing strict liability in this context indicate that California would follow what Prosser describes above as the rule of the "later cases," and reject any such exemption.

In *McGrath v. Basich Brothers Construction Co.,* 7 Cal.App.2d 573, 46 P.2d 981 (1935), the court ruled that a contractor engaged in building a highway under a contract with the state may be held strictly liable for damages caused by blasting on the highway projects. It is not clear from the opinion whether the defendant contrac-

6. This case may also be explained as exempting carriers from strict liability because of duty to carry goods tendered.

tor sought some form of exemption based upon the public contract, but the court stated:

> "If an injury occurs resulting from the performance of a lawful, voluntary but dangerous or perilous act, the actor shoulders the responsibility and must respond in damages. The general rule is that one *even when backed by authority of the state* must so use his rights as not to infringe upon the rights of another in the enjoyment of life or in the possession of property." 7 Cal.App.2d at 577, 46 P.2d at 983 (emphasis added).

Public authorization of the ultrahazardous activity in the form of a public contract afforded the defendant no protection from the burden of strict liability, and the court's language indicates that other forms of public authorization would do no more.

Public authorization did not preclude strict liability in *Luthringer v. Moore, supra,* and *Smith v. Lockheed Propulsion Co., supra.* In *Luthringer,* the hapless fumigator was held strictly liable despite the fact that he had been licensed to use the lethal gas which injured the plaintiff. 31 Cal.2d at 496, 190 P.2d 1. Similarly, in *Smith,* Lockheed Propulsion Co. was subjected to absolute liability although it was acting pursuant to a contract with the United States Air Force. 247 Cal.App.2d at 777, 56 Cal.Rptr. 128.

A public authorization exception does have some basis in reason when strict liability is imposed, as in *Green v. General Petroleum Corp., supra,* only as an equitable arrangement between the injured party and the risk creating actor. Insofar as strict liability is imposed on the innocent but dangerous actor because his conduct is anti-social, such liability would be inappropriate if specific public authorization is read to mean that the conduct is socially desirable.

However, California also imposes strict liability because certain activity is so dangerous that such a standard is thought necessary to distribute the loss among the general public. *Smith v. Lockheed Propulsion Co., supra.* There is no logical basis for a public authorization exception when this risk distribution rationale is utilized to justify the strict liability standard. The need to distribute the risk and the benefits to be derived from the distributions do not vary according to whether the dangerous activity is authorized by the state in some manner.

While neither the *Hertz* nor the *Pope* cases, cited by Southern Pacific, considered the effect of a risk distribution rationale on the propriety of imposing strict liability, risk distribution was considered by the Supreme Court of Washington in *Siegler v. Kuhlman,* 81 Wash.2d 448, 502 P.2d 1181 (1972) (concurring opinion by Rosellini). In *Siegler,* the defendants were the driver of a truck holding 3,800 gallons of gasoline, and the owner (Pacific Intermountain Express) of a trailer tank containing 4,800 gallons of gasoline. Shortly after exiting an interstate highway, the trailer tank overturned spilling thousands of gallons of gasoline on the road. When a vehicle passed along the road shortly thereafter, the fumes ignited, killing the vehicle's occupant. Evidence had been presented which indicated that the carrier was subject to federal regulation, and the plaintiff argued that the defendants had violated certain state regulations. The majority opinion held that the defendant carriers must be held strictly liable for two reasons: (1) that as a matter of abstract justice, the burden should be put "upon the one of the two innocent parties whose acts instigated or made the harm possible" (502 P.2d at 1185), and (2) that problems of proof justified a strict liability standard—including, the likely destruction of evidence when ultrahazardous activity miscarries, the inherent difficulty in proving causation where negligence is the standard, and the limited expertise of juries. The concurring opinion of Associate Justice Rosellini argued for an additional rationale:

> "In my opinion, a good reason to apply these principles, which is not mentioned in the majority opinion, is that the commercial transporter can spread the loss among his customers—who benefit from this extrahazardous use of the highways." 502 P.2d at 1188.

Although apparently subject to both state and federal regulation, which might be construed as somehow authorizing the ultrahazardous activity, the *Siegler* court looked directly to existing policy considerations to see if strict liability ought to be imposed.

■ Likewise, California courts, following the logical implications of the recognized rationale of risk distribution, would likely find that no exception ought to be created for carriers merely because they are authorized in some manner to commit dangerous acts.

The second basis for not imposing strict liability on common carriers is the one upon which Southern Pacific has relied in its briefs: that where a common carrier has a duty to transport dangerous cargo, it is unjust to hold it strictly liable when damages result from the transportation. This defense first appeared in *Actiesselskabet Ingrid v. Central Railroad Co. of New Jersey, supra*, a 1914 admiralty case. In *Ingrid*, a shipowner brought a libel to recover for the loss of his ship—the ship having been destroyed when dynamite loaded train cars, situated adjacent to the ship, exploded. The shipowner argued that the doctrine of *Rylands v. Fletcher* should be applied to hold the railroad absolutely liable for the loss of the ship. After expressing considerable doubt about whether the doctrine of liability without fault was acceptable under any circumstances, the *Ingrid* court reasoned that strict liability should not be imposed on common carriers transporting explosives since such carriers have a duty to carry cargo:

> "At the time of the explosion the dynamite was in the course of transportation. A common carrier must transport freight of this character over its line, and the doctrine of *Rylands v. Fletcher,* if applicable at all, cannot be applied to cases of this nature. We think there can be no doubt, so far as a common carrier is concerned, that such danger as necessarily results to others from the performance of

its duty, without negligence, must be borne by them as an unavoidable incident of the lawful performance of legitimate business. Indeed, in *Rylands v. Fletcher* the opinion of Blackburn, Judge in the Court of Exchequer Chamber, concedes this, for he says:

> 'Traffic on the highways, whether by land or sea, cannot be conducted without exposing those whose persons or property are near it to some inevitable risk; and, that being so, those who go on the highway or have their property adjacent to it may well be held to do so subject to their taking upon themselves the risk of injury from that inevitable danger; and persons who by the license of the owner pass near to warehouses where goods are being raised or lowered certainly do so subject to the inevitable risk of accident. In neither case, therefore, can they recover without proof of want of care or skill occasioning the accident.'

> It certainly would be an extraordinary doctrine for courts of justice to promulgate to say that a common carrier is under legal obligation to transport dynamite and is an insurer against any damage which may result in the course of transportation, even though it has been guilty of no negligence which occasioned the explosion which caused the injury. It is impossible to find any adequate reason for such a principle."[7]  216 F. at 78.

The argument that no strict liability should be imposed where the carrier is acting pursuant to a public duty was adopted by the American Law Institute (ALI) in 1937, when it set forth in its Restatement of Torts its scheme for imposing strict liability for the miscarriage of an ultrahazardous activity. See 3 American Law Institute, Restatement of Torts, §§ 519–521 (1938). The general rule adopted by the ALI is contained in § 519, which provides:

> "Except as stated in §§ 521–4, one who carries on an ultrahazardous activity is

---

**7.** Southern Pacific has not argued, as did the *Ingrid* court, that those passing near the channels of commerce assume the risk of harm

incident to the transportation of dangerous goods.

liable to another whose person, land or chattels the actor should recognize as likely to be harmed by the unpreventable miscarriage of the activity for harm resulting thereto from that which makes the activity ultrahazardous, although the utmost care is exercised to prevent the harm."

Ultrahazardous activity is defined by § 520:

"An activity is ultrahazardous if it

(a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and

(b) is not a matter of common usage."

The ALI carved out an exception to the general rule of § 519 in § 521, which provides:

"The rule stated in § 519 does not apply if the activity is carried on in pursuance of a public duty imposed upon the actor as a public officer or employee or as a common carrier."

This exception is explained by Comment (a) to § 521, which states in pertinent part:

"(A) common carrier, in so far as it is required to carry such explosives as are offered to it for carriage, is not liable for harm done by their explosion, unless it has failed to take that care in their carriage which their dangerous character requires."

Thus, the ALI would not impose strict liability on a common carrier where the ultrahazardous activity engaged in was required of it by its status as a common carrier.

The ALI position was followed by the Superior Court of Connecticut, New London County, in the *Christ Church Parish* case, *supra*. Plaintiffs in that case were injured when the defendants' truck, carrying explosive chemicals, blew up. Relying on the weight of authority in other jurisdictions, the Superior Court held that the carrier was not an insurer:

"The weight of authority in other jurisdictions supports this rule. The liability of the carrier should be predicated upon its knowledge of the dangerous propensities of the substance it is transporting, together with its use of a standard of care commensurate with the dangerous character of the substance." 199 A.2d at 709

Southern Pacific argues that California would find these authorities to be persuasive, and would adopt the rule of § 521. In support it cites the *Luthringer* case, in which the Supreme Court of California quoted at length from the ALI's Restatement of Torts, including § 521. See 31 Cal.2d at 499, 190 P.2d 1. However, although the California court quoted § 521 in *Luthringer*, this court cannot find that it adopted § 521, as Southern Pacific suggests. The question of a privilege based upon a public duty was not before the court. Also, the manner in which § 521 was quoted does not indicate that the court adopted that particular section of the Restatement.[8] While this court has an obligation to follow considered dicta of the California courts, *Rocky Mountain Fire & Casualty Co. v. Dairyland Insurance Co.*, 452 F.2d 603 (9th Cir. 1971) (per curiam), this court abdicates its responsibility if it seizes upon mere passing comment and invokes it as the law of the state. See *Hartford Accident and Indemnity Company v. First National Bank and Trust Company of Tulsa, Okl.*, 287 F.2d 69 (10th Cir. 1961); *Doucet v. Middleton*, 328 F.2d 97 (5th Cir. 1964); 1A Moore's Federal Practice ¶ .307(2), p. 3313.

The question remains, then, whether California would carve out an exception for common carriers engaged in a public duty, protecting them from strict liability. This court answers in the negative. If California predicated liability solely upon the "fairness" rationale appearing in the *Green* case, it might well find that strict liability was inappropriate. Under the *Green* rationale strict liability is imposed because the ultrahazardous actor intentionally exposes others to a serious danger—an anti-social

---

**8.** The *Luthringer* court stated: "It has been said:" followed by lengthy quotation of §§ 519, 520, 521, 523 and 524. 31 Cal.2d at 499, 190 P.2d 1.

**1214**

act is being redressed. Where the carrier has no choice but to accept dangerous cargo and engage in an ultrahazardous activity, it is the public which is requiring the carrier to engage in the anti-social activity. The carrier is innocent.

But, there is no logical reason for creating a "public duty" exception when the rationale for subjecting the carrier to absolute liability is the carrier's ability to distribute the loss to the public. Whether the carrier is free to reject or bound to take the explosive cargo, the plaintiffs are equally defenseless. Bound or not, Southern Pacific is in a position to pass along the loss to the public. Bound or not, the social and economic benefits which are ordinarily derived from imposing strict liability are achieved. Those which benefit from the dangerous activity bear the inherent costs. The harsh impact of inevitable disasters is softened by spreading the cost among a greater population and over a larger time period. A more efficient allocation of resources results. Thus, the reasonable inference to be drawn from the adoption of the risk distribution rationale in *Smith v. Lockheed Propulsion Co., supra,* is that California would follow the path of the Supreme Court of Washington in *Siegler v. Kuhlman, supra,* and find that carriers engaged in ultrahazardous activity are subject to strict liability.

IT IS THEREFORE ORDERED that Southern Pacific's motions to dismiss the ultrahazardous activity strict liability claims stated against it in the above entitled cases are DENIED.