INDIANA HARBOR BELT RAILROAD
COMPANY, Plaintiff,

v.

AMERICAN CYANAMID COMPANY
and Missouri Pacific Railroad
Company, Defendants.

James SANDERS, Plaintiff,

v.

INDIANA HARBOR BELT RAILROAD
COMPANY, Defendant.

James SANDERS, Plaintiff,

v.

NORTH AMERICAN CAR CORP., a Delaware Corp.; American Cyanamid Co., a Maine Corp.; Missouri Pacific Railroad Co., a Delaware Corp.; and Indiana Harbor Belt Railroad Co., an Indiana Corp., Defendants.

Nos. 80 C 1857, 80 C 2190 and 80 C 6762.

United States District Court, N. D. Illinois.

June 12, 1981.

Anna M. Kelly, Chicago, Ill., for Indiana Harbor Belt Railroad.

Ann Peterson, Wildman, Harold Allen & Dixon, Chicago, Ill., for American Cyanamid.

James Teykl, Anthony Scariano & Associates, Chicago Heights, Ill., for James Sanders.

## MEMORANDUM AND ORDER

MORAN, District Judge.

These diversity actions involve allegations of negligence and strict liability in tort as a result of an accident involving spillage of acrylonitrile, a hazardous and toxic substance. Defendant American Cyanamid Company ("Cyanamid"), manufacturer and shipper of the acrylonitrile, arranged for defendant Missouri Pacific to transport the substance in a leased car from Louisiana to Indiana Harbor Belt Railway's ("Indiana Harbor") freight yard in Illinois. There, Missouri Pacific was to deliver the car to Consolidated Rail Corporation ("Conrail") so that it could be further transported to Cyanamid's facility in New Jersey. Upon arrival at Indiana Harbor's freight yard, substantial amounts of acrylonitrile leaked from the freight car. Indiana Harbor alleges there was extensive damage to property, equipment and the water supply over a two mile area. The spill resulted in the evacuation of 3,000 people from their homes, interference with railroad operations for a substantial period of time and extensive expenditures to restore Indiana Harbor's property. Counts I and III of 80 C 1857 allege negligence by the defendants and both have filed an answer as to those counts. Count II alleges that defendant, American Cyanamid Co.

> engaged in ultra-hazardous activity in shipping acrylonitrile in interstate commerce because said commodity is a hazardous, flammable and toxic substance; that defendant, American Cyanamid Company, had a non-delegable duty to assure that said shipment was safely and properly loaded in proper non-defective equipment, and secured in such a manner as to prevent members of the public, including the plaintiff, from being exposed to the hazards of flammability and toxici-

ty inherent in the commodity being transported, while said commodity was in the stream of commerce; and that defendant failed to fulfill its duty to the public, including the plaintiff.

Cyanamid has filed a motion to dismiss Count II for failure to state a strict liability claim. For the reasons hereinafter stated, the motion to dismiss is denied.

After 80 C 1857 was filed, James Sanders, an employee who attempted to repair the leak on the tank car, brought suit against Indiana Harbor, alleging extensive personal injuries. (80 C 2190). A first amended complaint was filed several months later adding North American Car Corp., Cyanamid and Missouri Pacific Railroad Company as defendants. (80 C 6762). Defendant Cyanamid has filed a motion to dismiss Count IV of the amended complaint, which alleges defendant engaged in an ultra-hazardous activity and should be strictly liable. That motion is also denied.

Before reaching the motion to dismiss, several preliminary matters must be decided. Plaintiffs in 80 C 2190 inadvertently filed their amended complaint as a new case. (80 C 6762). The latter case will be dismissed and the amended complaint treated as part of the file in 80 C 2190.

The plaintiff in 80 C 1857 has submitted extensive information with the briefs regarding the nature of acrylonitrile. These documents are not part of the pleadings and the court may not consider them on a motion to dismiss.

■ Plaintiff Sanders has also filed a motion to consolidate these related cases for discovery purposes only. That motion is granted in light of the common questions of fact in the cases, all of which arose from the same accident. *Baldwin-Montrose Chemical Co. v. Rothberg*, 37 F.R.D. 354 (1964); F.R.C.P. 42(a). Defendant Cyanamid has not sufficiently demonstrated any prejudice which would result from this ruling.

Cyanamid argues that dismissal of plaintiff's strict liability counts is required because no cause of action has been stated

under Illinois law. They maintain that strict liability standards apply to activities which are inherently dangerous and which naturally and probably result in harm despite the exercise of the utmost care. They argue that Illinois law has limited the ultra hazardous activity concept to cases involving blasting or explosives and it has not been extended to the circumstances alleged in this case. They note that regardless of acrylonitrile's qualities as a hazardous substance, strict liability cannot be applied unless it is a hazardous activity. Defendant contends that their activity was not inherently dangerous as a matter of common knowledge or otherwise.

Plaintiff Sanders applies the same legal standards as Cyanamid but believes that Cyanamid's conduct fits within them. They acknowledge that these facts raise a question of first impression but argue that the allegations "fit comfortably within the contours of the Illinois absolute liability doctrine."

Indiana Harbor argues that Illinois courts apply strict liability principles when a peril with potentially grave consequences is introduced into the community. As they believe shipping acrylonitrile is intrinsically dangerous regardless of how careful the shipper may be, plaintiff urges that this court apply strict liability standards.

Illinois courts began applying strict liability concepts for inherently dangerous activities in 1877. In *The City of Joliet v. Harwood*, 86 Ill. 110 (1877), an independent contractor engaged in blasting to construct a sewer for the city. Despite the contractor's use of "all due care, skill and caution" the blasts caused damage to neighboring property. The court held the city liable for the damages despite the lack of negligence stating:

> "In this case the work which the contractor was required by the city to do was intrinsically dangerous, however carefully or skillfully done. The right of recovery in this case does not rest upon a charge of negligence on the part of the contractor; it rests upon the fact that the city caused work to be done which was intrinsically

dangerous—the natural (though not the necessary) consequence of which was the injury to plaintiff's property."

The doctrine was more fully developed in *Fitzsimmons & Connell Co. v. Braun*, 199 Ill. 390, 65 N.E. 249 (1902). In that case, plaintiff's building was damaged as the result of the explosion of heavy charges of dynamite by the defendant in constructing a nearby tunnel in a populous area. The court imposed liability without regard to the degree of care exercised where the natural and probable result of explosives was injury to another. The court stated that "the nature and power of dynamite as an explosive have been demonstrated by universal experience, and it is a matter of common knowledge that the use of dynamite as an explosive is intrinsically dangerous." *Id.* at 394, 65 N.E. 249. In reaching this result, the court noted that other jurisdictions had resolved the problem differently. The court here observed, however:

> If one who, for his own purposes and profit, undertakes to perform a work . . . inherently dangerous to the property of another, should be held liable for an injury occasioned by any substance cast by the explosives on the property of such other, it is only by the merest subtlety of reasoning he should be held not liable to respond for equal or greater damage caused by the concussion of the air or of the earth. *Id.* at 397, 65 N.E. 249.

An implicit value judgment was made that the perpetrator should bear the loss rather than the innocent property owner. Thus, liability was imposed.

This position was reaffirmed and extended more recently in *Opal v. Material Services Corp.*, 9 Ill.App.2d 433, 133 N.E.2d 733 (1956). The court held that there was no distinction between explosions resulting from stored dynamite or from those employed in blasting to determine liability. Again, the court discussed the relative positions of the parties as a basis for imposing liability. The court quoted Justice Holmes in The Common Law, p. 154:

> "The possibility of a great danger has the same effect as the probability of a less

one, and the law throws the risk of the venture on the person who introduces the peril into the community." If damage is inflicted, there ordinarily is liability, in the absence of excuse. When, as here, the defendant, though without fault, has engaged in the perilous activity of storing large quantities of a dangerous explosive for use in his business, we think there is no justification for relieving it of liability, and that the owner of the business, rather than a third person who has no relation to the explosion, other than that of injury, should bear the loss. The blasting cases seem to afford ample analogies and to justify this conclusion. *Id.* at 459, 133 N.E.2d 733.

Neither party has cited any Illinois authority discussing whether shipment of acrylonitrile is an inherently dangerous activity. The Illinois cases in this area have focused largely on blasting activities though they have not expressly limited the concept to this activity. This court is thus presented with an issue of first impression which it must resolve. The process is necessarily one of predicting how Illinois courts would decide the question were they called upon to do so. The dilemma is not unusual. "As long as there is diversity jurisdiction, 'estimates' are necessarily often all that federal courts can make in ascertaining what the state court would rule to be its law." *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 209, 76 S.Ct. 273, 279, 100 L.Ed. 199 (1956) (Frankfurter J., concurring). This court will examine the facts presented in the instant case with regard to the common law in Illinois. The court will also consider the law of other jurisdictions in the absence of resolution of this issue by Illinois courts.

■ The above discussed blasting cases provide a generalized standard by which the defendant's activity can be measured. If an activity is inherently dangerous and

harm naturally and probably results from it despite the exercise of utmost care, liability will result. The complaints here allege shipping acrylonitrile is an inherently dangerous activity both because of the characteristics of the chemical and the type of equipment upon which it was transported. Plaintiff argues that the natural and probable consequence of loading and transporting acrylonitrile in a defective tank car is property damage and personal injuries and cites the actual damage which allegedly occurred. As in any lawsuit, plaintiff must prove the facts alleged. If there is any set of facts, however, under which liability can be imposed, a motion to dismiss may not be granted. *Ashbrook v. Hoffman*, 617 F.2d 474 (7th Cir. 1980). This court believes that if the facts alleged are true, a cause of action has been stated under Illinois law.

The sets of facts here are analogous to the blasting cases in yet another respect. As in the blasting cases, defendant here acted "for his own purposes and profit" in introducing the peril into the community. Here, as in the blasting cases, liability should result.

This conclusion is bolstered by other Illinois opinions involving strict liability concepts. While cases imposing strict liability for subjacent support [1] and products liability [2] are not relevant to determine whether the complaint may stand on the basis of an ultra hazardous activity, some of those cases are helpful in discussing the bases for imposition of strict liability. Indeed, the Illinois courts recognized this in *Ruggeri v. Minnesota Mining & Manufacturing Co.*, 63 Ill.App.3d 525, 20 Ill.Dec. 467, 380 N.E.2d 445 (1978), a products liability case:

"Most jurisdictions in this country have adopted the principle of *Rylands v. Fletcher* . . . and impose liability on owners and users of land for harm resulting from abnormally dangerous conditions

1. *See Lloyd v. Catlin Coal Co.*, 210 Ill. 460, 71 N.E. 335 (1904), *Ciuferi v. Bullock Mining Co.*, 332 Ill.App. 1, 73 N.E.2d 855 (1947).

2. *See e. g. Ruggeri v. Minnesota Mining & Manufacturing Co.*, 63 Ill.App.3d 525, 20 Ill.Dec. 467, 380 N.E.2d 445 (1978); *Stanfield v. Medalist Industries*, 17 Ill.App.3d 996, 309 N.E.2d 104 (1974); *Dunham v. Vaughan & Bushnell Mfg. Co.*, 42 Ill.2d 339, 247 N.E.2d 401 (1969); *Haley v. Merit Chevrolet Inc.*, 67 Ill.App.2d 19, 214 N.E.2d 347 (1966); *Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182 (1965).

and activities ... we are not suggesting that this rule of strict liability has applicability here except to suggest a parallel between the underlying basis of that rule and strict product liability because of the unreasonably dangerous nature of the activity and the product." *Id.* 20 Ill.Dec. at 469, 380 N.E.2d 445.

The product liability cases consistently recognize that liability is imposed primarily for public policy reasons. Where a defective condition makes a product unreasonably dangerous to the user, Illinois courts have found it just to impose "the loss on the one creating the risk and reaping the profit." *Suvada v. White Motor Co.,* 32 Ill.2d 612, 619, 210 N.E.2d 182, 186 (1964).

In *Ruggeri, supra* plaintiff sued for injuries resulting from a flammable adhesive "33 Red" manufactured by defendant. The court was presented with extensive evidence about the dangerous nature of the product and imposed liability upon the manufacturer. The court framed the issue as follows:

Are there products with such dangerous qualities that they should not be placed in the stream of commerce; or if so placed that the risk of harm to the public is so

great that liability should be imposed on the manufacturer if harm befalls one exposed to the product. *Id.* 20 Ill.Dec. at 469, 380 N.E.2d 445.

The above cases demonstrate that Illinois courts have made value judgments seeking to protect the public from various harms. The court's inclination to make these kinds of judgments in tort cases was most recently demonstrated in *Alvis v. Ribar,* —— Ill. ——, 52 Ill.Dec. 23, 421 N.E.2d 886 (1981). In that case, the court abandoned contributory negligence concepts in favor of comparative negligence, stating:

"We believe that the concept of comparative negligence which produces a more just and socially desirable distribution of loss is demanded by today's society." At ——, 52 Ill.Dec. 30, 893 N.E.2d 421.

This court's ruling is consistent with the general concern of fairly distributing the loss and of protecting the public from harm.

Other jurisdictions have been presented with factual situations either similar or analogous to the one presented here. The standards employed are generally consistent although courts have reached different conclusions regarding the activities which it considers ultra hazardous.[3] The Restate-

3. In the following cases strict liability for ultra hazardous activities was applied: *Mowrer v. Ashland Oil & Refining Co., Inc.,* 518 F.2d 659 (7th Cir. 1979) (oil company engaged in waterflood operations resulting in oil seepage on adjoining land); *Chavez v. Southern Pacific Transportation Co.,* 413 F.Supp. 1203 (E.D.Calif.1976) (explosion of 18 bomb-loaded boxcars in railroad yard); *Chapman Chemical v. Taylor,* 215 Ark. 630, 222 S.W.2d 820 (1949) (chemical dust in spraying crops floated onto plaintiff's farm); *Yommer v. McKenzie,* 255 Md. 220, 257 A.2d 138 (1969) (leakage of gasoline storage tanks onto private residence); *McLane v. Northwest Natural Gas Co.,* 255 Or. 324, 467 P.2d 635 (1970) (explosion of stored gas in populous area); *Siegler v. Kuhlman,* 81 Wash.2d 448, 502 P.2d 1181 (1972) *cert. denied,* 411 U.S. 983, 93 S.Ct. 2275, 36 L.Ed.2d 959 (1973) (hauling gasoline upon the highway). In several others, the court remanded the case suggesting that strict liability principles would be applied if plaintiffs could prove the activity met the Restatement standards. *Doundoulakis v. Town of Hempstead,* 42 N.Y.2d 440, 398 N.Y.S.2d 401, 368 N.E.2d 24 (1977) (hydraulic dredging); *Zero Wholesale Gas Co. v. Stroud,* 571 S.W.2d 74, 264 Ark. 27 (1978) (delivery of

propane gas). See also *China Union Lines, Ltd. v. A. O. Anderson & Co.,* 364 F.2d 769 (5th Cir. 1966), *cert. denied* 390 U.S. 974, 88 S.Ct. 1015, 19 L.Ed.2d 1191 (1968) (transport of acrylonitrile). Other cases have refused to recognize various activities as ultra hazardous and have not applied strict liability standards. *Ozark v. Stubb's Transports,* 351 F.Supp. 351 (W.D.Ark. 1972) (transportation of gasoline is a matter of common every day occurrence); *Fritz v. E. I. du Pont de Nemours & Co.,* 45 Del. 427, 75 A.2d 256 (1950) (leakage of chlorine gas in state which does not recognize strict liability concepts). Many courts including Illinois will not apply strict liability standards in analogous circumstances because of the generally accepted rule that a common carrier is not an insurer of goods it transports. See Restatement § 521 Abnormally Dangerous Activity Carried on in Pursuance of a Public Duty.

The rules as to strict liability for abnormally dangerous activities do not apply if the activity is carried on in pursuance of a public duty imposed upon the actor as a public officer or employee or as a common carrier.

See *Town of East Troy v. Soo Line Railroad Co.,* 409 F.Supp. 326 (E.D.Wis.1976) (spillage

ment of Torts, applied in most jurisdictions,[4] § 519 and § 520 has formulated a definition of ultra hazardous activity. It is one which necessarily involves a risk of serious harm to a person which cannot be eliminated by the exercise of the utmost care and it is not a matter of common usage. The Restatement considers six factors to determine if an activity is ultra hazardous: 1) the existence of a high degree of risk of harm to person, land or chattels of others, 2) likelihood the harm will be great, 3) inability to eliminate the risk by the exercise of reasonable care, 4) it is not a matter of common usage, 5) the inappropriateness of the activity to the place where it is carried on and 6) the extent to which the value to the community is outweighed by dangerous attributes.

This court has been able to find only one case which involves the chemical, acrylonitrile, involved here. In *China Union Lines, Ltd. v. A. O. Anderson & Co.,* 364 F.2d 769 (5th Cir. 1966), the Fifth Circuit suggested the possibility of a strict liability standard for shipment of acrylonitrile. That court stated the defendant had a duty to "not knowingly participate in a method of handling or transport which would imprudently imperil the lives of these people." *Id.* at 797. The court remanded the case to the district court for a determination of:

> what Cyanamid actually knew and ought to have known about its own product and, knowing that, what in prudence considering these extremely high hazards could and ought to be done to minimize, if not

eliminate, the devastating consequences of a foreseeable casualty. *Id.* at 797. The court further stated that Cyanamid "should have been put to its proof . . . to refute the hazardous characteristics" of the substance. *Id.* at 798. The Fifth Circuit echoes concerns expressed by this court and its reasoning is consistent with Illinois decisions.

There are two opinions which this court believes provide persuasive rationales for finding liability in analogous circumstances. In *Chavez v. Southern Pacific Transportation Co.,* 413 F.Supp. 1203 (E.D.Calif.1976), Southern Pacific transported 18 boxcars loaded with bombs. The bombs exploded in a railroad yard causing personal injury and property damage. The court imposed strict liability because the defendant was engaged in an ultra hazardous activity. The court focused on the relative positions of the parties and the desirability of properly distributing the loss. The court emphasized that one who intentionally acts with knowledge that their activity may cause harm, despite the exercise of due care, should "in all fairness be required to compensate the other for the damage done." *Id.* at 1207.

> "The risk distribution justification for imposing strict liability is well suited to claims arising out of the conduct of ultra hazardous activity. The victims of such activity are defenseless. Due to the very nature of the activity, the losses suffered as a result of such activity are likely to be substantial—an 'overwhelming misfor-

of carbolic acid by derailment of train); *Christ Church Parish v. Cadet Chemical Corp.,* 25 Conn.Sup. 191, 199 A.2d 707 (1964) (transportation of 20 tons of various chemical substances); *Reddick v. General Chemical Co.,* 124 Ill.App. 31 (1905) (shipper of sulphuric acid); *Collins v. Liquid Transporter,* 262 S.W.2d 382 (Ky.1953) (transporter of gasoline); *Pecan Shoppe of Springfield v. Tri-State Motor Transit Co.,* 573 S.W.2d 431 (Mo.App.1978) (transporter of explosives); *Pope v. Edward M. Rude Carrier,* 75 S.E.2d 584, 138 W.Va. 218 (1953) (transporter of explosives; also refused to apply strict liability standards to manufacturer). In *Siegler, supra* and *Chavez, supra* above, those courts refused to apply the general common carrier rule. The plaintiffs here have only sought to impose liability upon the manufactur-

er, who arranged for the acrylonitrile to be transported. Plaintiffs have not attempted to sue the transporters under a strict liability theory. Thus, the exception provided by § 521 is inapplicable here.

4. The Illinois courts have neither discussed or adopted the Restatement approach in cases involving ultra hazardous activities. The court apparently assumes, however, that it applies in light of its statement in *Ruggeri, supra* that most jurisdictions adopted the principles of *Rylands v. Fletcher* and cites the Restatement. The court further states that "one of the activities to which the rule of *Rylands v. Fletcher* has often been applied is the storing and use of explosives and flammable materials." *Id.* 20 Ill.Dec. at 469, 380 N.E.2d 445.

tune to the person injured' .... By indirectly imposing liability on those that benefit from the dangerous activity, risk distribution benefits the social-economic body in two ways: (1) the adverse impact of any particular misfortune is lessened by spreading its cost over a greater population and over a longer time period, and (2) social and economic resources can be more efficiently allocated when the actual costs of goods and services (including the losses they entail) are reflected in their price to the consumer. Both of these benefits may be achieved by subjecting Southern Pacific to strict liability. *Id.* at 1209.

The California court more expressly articulated the rationale interwoven throughout Illinois strict liability opinions. This court believes the same considerations apply here as in *Chavez.*

The Supreme Court of Washington in *Siegler v. Kuhlman,* 81 Wash.2d 448, 502 P.2d 1181 (1972) *cert. denied* 411 U.S. 983, 93 S.Ct. 2275, 36 L.Ed.2d 959 (1973) applied the Restatement rule to find defendant strictly liable for damages resulting from spillage of gasoline on a public highway. The court found hauling gasoline as cargo an abnormally dangerous activity emphasizing the nature of gasoline:

> "Dangerous in itself, gasoline develops even greater potential for harm when carried as freight—extraordinary dangers deriving from sheer quantity, bulk and weight, which enormously multiply its hazardous properties.... It is quite probable that the most important ingredients of proof will be lost in a gasoline explosion and fire. Gasoline is always dangerous whether kept in large or small quantities because of its volatility, inflammability and explosiveness. But when several thousand gallons of it are allowed to spill across a public highway— that is, if, while in transit as freight, it is not kept impounded—the hazards to third persons are so great as to be almost beyond calculation.... The rule of strict liability rests not only upon the ultimate idea of rectifying a wrong and putting the burden where it should belong as a matter of abstract justice, that is, upon the one of the two innocent parties whose acts instigated or made the harm possible, but it also rests on problems of proof." *Id.* at 1184–5.

The court also noted "stored in commercial quantities, gasoline has been recognized to be a substance of such dangerous characteristics that it invites a rule of strict liability—even where the hazard is contamination to underground water supply and not its more dangerous properties such as its explosiveness and flammability." *Id.* at 1186.

The defendant's motion to dismiss is denied. This court believes the complaint states sufficient allegations to allow plaintiffs to prove a strict liability claim.