LILLIAN RUGGERI, Adm'r of the Estate of John L. Ruggeri, Deceased, Plaintiff-Appellee, *v.* MINNESOTA MINING & MANUFACTURING COMPANY, Defendant-Appellant.

Fifth District No. 76-534

Opinion filed August 8, 1978.

Howard Boman, of Dunham, Boman & Leskera, of East St. Louis, for appellant.

John F. O'Connell, of O'Connell & Waller, of Belleville, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant, Minnesota Mining & Manufacturing Company (3M Company), appeals from the judgment of the Circuit Court of St. Clair County entered on a jury verdict finding it liable, under a theory of strict products liability, for the death and personal injury prior to death sustained by plaintiff's intestate John Ruggeri, and awarding damages in the amount of $50,000. On appeal, defendant contends that the evidence adduced at trial failed to establish that it had manufactured and sold an unreasonably dangerous product as alleged by the plaintiff in her complaint.

John Ruggeri was employed as a general handyman by the L. H. Kiefer Company, an air conditioning and heating contracting business located in Belleville, Illinois. Kiefer Company maintained two places of business in Belleville, a sheet metal shop on Florida Avenue where air conditioning duct work was fabricated, and a maintenance shop and general office at 800 East Main Street. In the process of manufacturing sheet metal ducts, Kiefer utilized fiberglass insulation which in 1971 was applied to the duct work by means of an adhesive known as 33 Red. This adhesive was manufactured by the defendant and purchased by Kiefer in five gallon cans which were delivered and kept at its sheet metal shop on Florida Avenue. Each can of the material bore a wrapper which warned of its extremely flammable and dangerous nature and that before use, all pilot lights and flames should be extinguished. The adhesive was applied to the duct work by the sheet metal workers by means of a spray unit manufactured by Binks Manufacturing Company. This apparatus consisted of a compressor, pressure tank, hose and spray gun and was kept in the sheet metal shop.

On September 21, 1971, Ruggeri apparently determined that the spray unit needed cleaning and so he disconnected the tank, hoses and nozzle

from the permanently installed compressor and took the unit to the maintenance shop on 800 East Main Street where there was a tank of nonflammable cleaning solvent. After arriving at the maintenance shop, Ruggeri was seen unloading the unit from a truck and placing it into the cleaning solvent tank. After disengaging the spray gun from the unit, Ruggeri removed the top of the tank which released the pressurized adhesive throughout the room because for some reason the pressure in the tank did not "bleed-off." Shortly thereafter, Ruggeri was observed almost completely covered with the material and diligently attempting to clean the adhesive from the floor. An eyewitness testified that only a few minutes passed when a flame shot forth from the pilot light of a furnace 14 feet away at the other end of the shop causing the room to be instantly enveloped in flames in a "flash," also described as an explosion. Ruggeri was completely afire as he ran from the shop where co-workers came to his aid and extinguished the flames. He was taken to the hospital by ambulance where he later died as a result of the severe burns he had sustained.

Plaintiff filed suit against the defendant and Binks Manufacturing Company under theories of negligence and strict products liability. Thereafter the defendant brought Kiefer Company into the action as a third-party defendant. Prior to trial Binks entered in a loan receipt agreement with the plaintiff whereby it advanced the plaintiff $40,000 and was subsequently dismissed from the action.

Thomas Kiefer, vice-president and general manager of Kiefer Company, testified that in Ruggeri's capacity as a handyman for the company he was not involved in the application of 33 Red and he could not state that he was aware of its flammable nature. According to Kiefer, it was the job of the sheet metal workers to fill the spray unit with the adhesive. Kiefer could not recall whether Ruggeri had ever been instructed on how to clean the sprayer, but he opined that if Ruggeri had known of the material's high flammability he never would have taken the unopened spray unit inside the maintenance shop, and evidence suggests that the equipment was usually cleaned at the shop on Florida Avenue outdoors, often by the deceased. Why he took the apparatus to the office on Main Street is unknown. It was suggested that the spray equipment was particularly dirty and in such condition could be cleaned more thoroughly in the tank located at the maintenance shop.

The plaintiff called Gordon Hollingsworth, technical analyst and manager of the Adhesives, Coatings and Solvents Division Laboratory of 3M Company, as an adverse witness to testify regarding the flammable characteristics of 33 Red. Hollingsworth stated that the adhesive had an aliphatic petroleum base and a flash point of less than -14° F. He explained that at any temperature of -14° F or above the material will quickly

evaporate and form a combustible mixture which will ignite in a flash if brought into contact with a spark. Although later ruled out as an issue by the trial court, Hollingsworth related that the defendant also manufactured a nonflammable adhesive, known as 35 Blue, which had a chlorinated solvent base. He stated that 35 Blue was developed in response to local codes in some areas which prohibited the use of flammable adhesives. According to Hollingsworth, the two products were almost identical in all other respects except that 35 Blue was somewhat more toxic than 33 Red.

Two other witnesses testified on behalf of the plaintiff, Dr. Erwin Hoelscher and Herman Boucher. Hoelscher, a professor of mechanical engineering at Washington University, St. Louis, Missouri, testified as an expert witness for the plaintiff. He stated that a material with a flash point of -14° F was potentially hazardous to anyone using it. He also testified that if reasonable alternatives to 33 Red existed it would be the proper engineering safety practice to use the material which exposed a worker to the least amount of danger. Boucher, a private consulting engineer, stated that 33 Red was extremely dangerous if used in the vicinity of any ignition source because of the product's low flash point. According to Boucher, several nonflammable solvents were available for use in lieu of 33 Red's alphatic petroleum base.

At the close of all of the evidence in the case the plaintiff dismissed the negligence count in her complaint against the defendant thereby resulting in the dismissal of the defendant's third party action against Kiefer Company. Defendant's motion for a directed verdict was denied and the jury returned a verdict in favor of the plaintiff for $50,000.

Defendant admits the product was dangerous, as the warning on the containers proclaimed, but insists that it was not unreasonably dangerous especially considering that it was not sold to the general public. The issue in our view is a narrow one: are there products with such dangerous qualities that they should not be placed in the stream of commerce; or if so placed that the risk of harm to the public is so great that liability should be imposed on the manufacturer if harm befalls one exposed to the product.

Most jurisdictions in this country have adopted the principle of *Rylands v. Fletcher*, L.R. 3 H.L. 330 (1868), and impose strict liability on owners and users of land for harm resulting from abnormally dangerous conditions and activities. (See cases collected in Prosser, Torts §78, at 505 *et seq.* (4th ed. 1971), and Restatement (Second) of Torts §519 (1976).) We are not suggesting that this rule of strict liability has applicability here except to suggest a parallel between the underlying basis of that rule and strict product liability because of the unreasonably dangerous nature of the activity and the product. One of the activities to which the rule of

*Rylands v. Fletcher* has often been applied is the storing and use of explosives and flammable materials.

■■ The foundation of a defective product cause of action based on strict liability in tort is that the plaintiff's injury resulted from a condition of the product which rendered it unreasonably dangerous and that the condition existed at the time it left the manufacturer's control. (*Dunham v. Vaughan & Bushnell Mfg. Co.*, 42 Ill. 2d 339, 247 N.E.2d 401 (1969); *Suvada v. White Motor Co.*, 32 Ill. 2d 612, 210 N.E.2d 182 (1965).) Thus, there exists an affirmative duty on the manufacturer not to place into commerce articles or products which are unreasonably dangerous when used for their intended purpose. (*Rivera v. Rockford Machine & Tool Co.*, 1 Ill. App. 3d 641, 274 N.E.2d 828 (1st Dist. 1971).) Defendant admits that the cleaning of the spray equipment by Ruggeri was a related necessary function to the use of 33 Red which was foreseeable and not an unintended use. However, defendant contends that the evidence adduced at trial proved only that the adhesive had dangerous properties and not that it was unreasonably dangerous. We disagree.

In support of its contention defendant asserts that 33 Red was not sold to the general public, but rather to a specialized segment, the insulation industry. Defendant maintains that this fact presupposes some knowledge on the part of the group's users. Moreover, defendant argues that Kiefer Company, on its own volition, ordered 33 Red rather than 35 Blue or any other competitive product. Despite advancing this argument regarding Kiefer Company's voluntary choice of 33 Red, defendant complains that this cause was tried on the phantom issue that it also manufactured a safer product, 35 Blue, which is nonflammable.

■■■ We find no merit in the defendant's contention that 33 Red was not the only product available for use by Kiefer Company. Allowing a user to select the safer of two or more products is not an option available to the defendant. Rather as a manufacturer, the defendant is under a duty to manufacture a product which is "reasonably safe." (*Robinson v. International Harvester Co.*, 44 Ill. App. 3d 439, 444, 358 N.E.2d 317, 321 (5th Dist. 1976), *rev'd on other grounds*, 70 Ill. 2d 47, 374 N.E.2d 458 (1977); *Scott v. Dreis & Krump Manufacturing Co.*, 26 Ill. App. 3d 971, 985, 326 N.E.2d 74, 84 (1st Dist. 1975).) This principle holds true regardless of whether an alternative product was available inasmuch as the state of the art is no defense in strict products liability actions. (*Cunningham v. MacNeal Memorial Hospital*, 47 Ill. 2d 443, 266 N.E.2d 897 (1970); *Kerns v. Engelke*, 54 Ill. App. 3d 323, 369 N.E.2d 1284 (5th Dist. 1977).) We are of the opinion that the jury's finding, as evidenced by its verdict, that the adhesive was too volatile and flammable for its reasonably foreseeable intended use and thus, unreasonably dangerous, was well supported by the evidence.

■■ Plaintiff also alleged as one theory of recovery that the warning was defective, arguing that the defendant should have attached some warning to the spray apparatus manufactured by Binks. We find little merit to this contention, however, as 3M Company's adhesive could be used in spray equipment manufactured by different companies and all such equipment had multiple uses and could be used to spray paint and other substances. In short we find the warning given adequate.

■■ ■ Defendant finally contends that Ruggeri assumed the risk of his injuries and resulting death when he cleaned the spray unit which contained the flammable adhesive. Again we disagree. The test of whether a user has assumed the risk of a product known to be dangerously defective is a subjective one rather than an objective one. (*Williams v. Brown Manufacturing Co.*, 45 Ill. 2d 418, 261 N.E.2d 305 (1970).) Hence, the burden is on the defendant to prove that the user knew of the defective condition, but nevertheless deliberately and unreasonably exposed himself to the danger, or that the defect and danger were so open and obvious that the plaintiff must have comprehended them. (*Collins v. Musgrave*, 28 Ill. App. 3d 307, 328 N.E.2d 649 (5th Dist. 1975); *Sweeney v. Matthews*, 94 Ill. App. 2d 6, 236 N.E.2d 439 (1st Dist. 1968), *aff'd*, 46 Ill. 2d 64, 264 N.E.2d 170 (1970).) We find nothing in the record which would tend to show that plaintiff's intestate had knowledge of the flammable and dangerous characteristics of 33 Red. From the testimony given at trial, it appears that Ruggeri was an alert and conscientious worker who would not have cleaned the spray unit inside the maintenance shop had he been aware of or appreciated the danger. Absent proof that the decedent was aware of the dangerous nature of the adhesive it cannot be said that he assumed the risk as a matter of law.

For the foregoing reasons we affirm the judgment of the Circuit Court of St. Clair County.

EBERSPACHER, P. J., and G. J. MORAN, J., concur.