Fulgencio Franco, as Administrator of the Estate of Francisca Franco, Deceased, Appellant, v Dennis L. Zingarelli et al., Respondents.

First Department, January 17, 1980

## APPEARANCES OF COUNSEL

*Martin S. Rothman* of counsel (*Joseph Irom* and *Milton*

*Wittels* with him on the brief; *Seligson, Rothman & Rothman,* appellate counsel for *Irom & Wittels, P. C.,* attorneys), for appellant.

*Leo Eckman* of counsel *(Greengold & Eckman,* attorneys), for respondents.

## OPINION OF THE COURT

Lupiano, J.

This appeal is from a judgment entered after a jury returned a verdict in favor of defendants in a personal injury action governed by New York's comparative negligence rule.[1] The circumstances of the accident as gleaned from the testimony may be set forth as follows:

On February 28, 1976, at about noon, decedent Francisca Franco, a 65-year-old woman, was crossing at the intersection of Tremont Avenue with Park Avenue, in The Bronx, when she was struck by a Volkswagen automobile operated by defendant Dennis L. Zingarelli and owned by defendant Christine M. Lesnak, who was then sitting beside him and is now his wife. The weather was clear and the roadway was dry. Zingarelli testified that while driving south on Park Avenue, he drove to the intersection and stopped behind one or two cars which were waiting for the light to change from red to green. After the light turned green and the vehicles in front of him moved, Zingarelli proceeded into and was almost through the intersection when he noticed the decedent, approximately 15 feet away, proceeding as a pedestrian across Park Avenue from west to east, but not in the crosswalk. She was coming from behind the first parked car south of the crosswalk when he first saw her. Traveling at about 15 miles an hour, and apparently or possibly in the act of shifting gears when he first saw decedent, Zingarelli swerved the Volkswagen to the left and applied the brakes. Contact was made with this pedestrian and the vehicle came to rest about a foot away. Police testimony placed the vehicle 26 feet away

---

1. CPLR 1411 entitled "Damages recoverable when contributory negligence or assumption of risk is established," effective September 1, 1975, provides: "In any action to recover damages for personal injury, injury to property, or wrongful death, the culpable conduct attributable to the claimant or to the decedent, including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages."

from the body of the pedestrian when the officer arrived at the scene. Two days later the pedestrian, Francisca Franco, died, the death certificate disclosing as cause of death, fracture of left femur, bilateral tibias and fibulas and traumatic lacerations of the liver. Testimony from witnesses supportive of plaintiff's position tended to show that the vehicle which struck decedent speeded up to a high rate of speed in an endeavor to "beat the light" which was changing from green or yellow to red.[2] The force of the impact was described by one witness, who did not see the impact because it occurred behind her, as being of sufficient magnitude that she "felt it." Another witness described decedent as being thrown by the impact some 30 feet in the air. Two women were crossing the intersection just prior to decedent, and one of them testified that decedent was right behind her proceeding across the intersection.

The record discloses that the accident occurred on a Saturday, in a busy shopping area, which at the time of the incident exhibited normal Saturday crowds and traffic.

Defendant Lesnak, the owner-passenger of the vehicle which struck this elderly woman, testified that the Volkswagen was stopped on Park Avenue, behind two other vehicles which were waiting for the light to change to green. After an interval of some two or three minutes, the other cars proceeded into the intersection, the first turning left onto Tremont Avenue and the next going straight ahead. This latter automobile, however, stopped to let some pedestrians finish crossing. According to Lesnak, just as the "Volks" was almost through the intersection, the decedent stepped out from between two parked cars on the right side, south of the intersection. She first saw the decedent about 18 feet away and when decedent was one or two steps out of the space between the parked vehicles. Previously, the "Volks" had been traveling at 15 miles per hour and accelerating. Now it slowed down to about two miles an hour and swerved to the left. Nevertheless, decedent was struck and Lesnak heard glass break. Damage to the vehicle from the impact consisted of a broken windshield and a dented fender.

The defendants' case basically consisted of testimony of one Dr. Regal and defendants Zingarelli and Lesnak (Mr. and Mrs.

---

2. The record contains testimony of eyewitnesses to the effect that the "Volks" was traveling at a speed of approximately 40 to 50 miles per hour at or just prior to the time of impact.

Zingarelli). Plaintiff's case basically consisted of testimony of decedent's husband, who in his capacity as administrator of her estate is plaintiff herein, decedent's daughter, the police officer who went to the scene of the accident, Gilbert Figueroa, a witness to the accident, one of decedent's sons (Fulgencio Franco, Jr.), and Ms. Maria Solis a witness to the circumstances surrounding the accident, although she did not observe the impact itself.

Defendants' expert witness, Dr. Regal, whose opinion was relevant to the nature of decedent's eyesight at the time of the accident, responded to a hypothetical question by defense counsel:

"Q. Now, Doctor, given a person who has cataracts in both eyes, second degree, have you an opinion as to whether or not that person could see the color of a light 35 to 40 feet away from where they are standing * * *

"A. I would say moderately advanced cataract, the patient would not be able to see the color * * * Everything looks gray * * * They can see some light but cannot determine whether it's green or the caution light or the red light."

On cross-examination, Dr. Regal was constrained to admit that he did not know what degree and what type of cataracts the decedent actually had.

In view of the jury verdict for the defendants dismissing the complaint, it follows that the jury found as a fact *on this record* that defendants were totally free from any degree of negligence, however slight, and that the decedent was totally, not partially, negligent. It also logically follows that the testimony of the two witnesses to the accident, which clearly tended to demonstrate at least some degree of negligence on the defendant operator's part, was disbelieved.

Plaintiff, feeling aggrieved by the result in light of this record which contains, *inter alia,* undisputed physical evidence tending to show a severe and powerful impact between the vehicle and the decedent, thus denoting a greater force at work than would most likely result from a slow moving small vehicle, raises a series of claimed errors which he contends deprives plaintiff of a fair trial and casts a pall of basic prejudicial error over the verdict.

The first error concerns the fact that the trial court permitted defendants' counsel, over objection, to ask the police officer who had arrived at the accident scene, on cross-exami-

nation, and the defendant operator Zingarelli, on direct examination, whether the operator was arrested, to which both witnesses responded in the negative. It is well recognized that "[t]he mere fact of arrest has no probative value and is inadmissible in a civil action involving the same facts" (2 Bender's New York Evidence, § 73.02 [2]). The arrest of an operator of a vehicle may not serve as the basis for an inference of negligence (Fisch, New York Evidence [2d ed], § 244). Obviously, if plaintiff's counsel sought to gain an unfair advantage by asking the defendant operator or the police officer if defendant had been arrested, assuming such arrest, defense counsel would properly object. Similarly, as proof of arrest may not serve as the basis for an inference of negligence, the absence of arrest may not serve as the basis for an inference of no negligence. Yet, it is just such an unfair advantage that defense counsel sought and obtained because of the trial court's failure to sustain plaintiff's counsel's objection.

■■ The second error is the trial court's charging the jury on "unavoidable accident" despite the paucity of proof of an "unavoidable accident." Although plaintiff's counsel failed to object to this portion of the charge, we are asked in the interest of justice to reverse. Unavoidable accident may only be charged on appropriate facts, i.e., where the evidence could reasonably support a finding of unavoidable accident (Dorn v Butts, 46 Misc 2d 953). This record may not reasonably support such a finding due to the paucity of proof on this issue.

"Where there is no evidence that the operator of the motor vehicle was negligent in any way, or that he could have anticipated the resulting accident, the accident is deemed to have been an inevitable or unavoidable one for which no recovery may be had" (4A NY Jur, Automobiles and Other Vehicles, § 677). In effect, on this record, the jury was invited by virtue of this portion of the charge to engage in speculation. There was evidence tending to show negligence on the defendant operator's part and evidence also relevant on the issue of his anticipation, or lack thereof, with respect to the resulting accident. Also, there was evidence tending to show negligence on the plaintiff's part. There was, however, a clear lack of evidence tending to show "unavoidable accident."

■■ The next claimed error consists of the ambiguous nature of the charge respecting plaintiff's (not the defendant

operator's) conduct insofar as violations of the city traffic regulations and the Vehicle and Traffic Law are concerned. The trial court charged, again without objection by the plaintiff's counsel as follows: "Section 41 Subdivision C of the (traffic) regulations of the City of New York reads as follows, and I quote: 'Notwithstanding the provisions of Subsections A and B of this section, no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impractical for the driver to yield.' Section 42 of the Traffic Regulations reads as follows, and I quote: 'Subdivision A Every pedestrian crossing a roadway other than within a marked or unmarked crosswalk shall yield the right of way to all vehicles upon the roadway.' The subdivision of the same Section 42 reads as follows, and I quote: 'No pedestrian shall cross any roadway at an intersection except within a marked or unmarked crossway' . . . I must charge you that the violation of an ordinance such as I have read to you . . . is to be considered by you *as some evidence of negligence* . . . The deceased . . . (was) also required to obey the statutes governing traffic at the time and place of the accident . . . I must charge you that a violation of a statute (The Vehicle and Traffic Law) shall be considered by you as *absolute evidence of negligence* . . . If you find that the deceased Francisca Franco violated the statute by suddenly walking or running into the roadway where the vehicle was travelling, making it impractical for the defendants to yield the right of way, you will find that the deceased was negligent and contributed by her negligence to this injury which resulted in her death" (emphasis supplied). The ambiguous nature of this portion of the charge as given is confusing. Sections 41 and 42 of article 4 of the Traffic Regulations of the City of New York promulgated by the Transportation Administration of the City of New York insofar as narrated in the trial court's charge herein are essentially identical to sections 1151 and 1152 of the Vehicle and Traffic Law. The lack of clarity in the court's charge regarding the dichotomy between violation of the city traffic regulations being only evidence of negligence, while violation of the statute—the Vehicle and Traffic Law—is negligence, served only to confuse the jury. It is well recognized that the act of a pedestrian in crossing a street at a point other than an intersection does not, of itself, constitute contributory negligence as a matter of law *(Dann v Martin,* 52 AD2d 687; *Hogeboom v Protts,* 30 AD2d 618, 619).

"The Vehicle and Traffic Law contains several provisions declaring the duties of pedestrians who cross a roadway at other than crosswalks. It declares that every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway * * * The fact that a pedestrian undertakes to cross a street at a place other than a regular crossing will not, of itself, constitute contributory negligence so as to defeat an action for his injury, although if he elects to do so, rather than go to the regular crossing, he will be required to use greater care for his own safety than when he crosses at the place provided for pedestrians. The statute does not prohibit a pedestrian from crossing the roadway outside of a crosswalk. All that the law requires of a pedestrian crossing outside of a crosswalk is that he yield the right of way to a motor vehicle if the situation is such, taking into account the respective positions of the parties, and the speed at which each is traveling, that if each persists in his course the pedestrian will be struck by the automobile. The rule by which to determine whether one crossing a street between crossings has exercised the greater care required in such case is the rule of ordinary care, that is, has he used the care which an ordinary prudent person would use under the same conditions, and the question whether he has actually exercised that degree of care is usually one for the jury" (4A NY Jur, Automobiles and Other Vehicles, § 784). Succinctly stated, the fault of the charge in this regard lies in its suggestion to the jury that crossing a street at a place other than within a marked or unmarked crossway is, of itself, absolute evidence of negligence (cf. PJI 2:75; see, also, 1 NY PJI2d 220-221). It is also pointed out that "[o]rdinary or reasonable care in the operation of a motor vehicle at an intersection * * * generally requires more precautions than are necessary when driving elsewhere in a street or highway. A motorist approaching an intersection is under a duty to be vigilant, and to have his vehicle under such control as to be able to stop at the shortest possible notice, and if he does not thus keep his vehicle under control and an accident ensues, he may be held liable for the resulting damages or injuries" (4A NY Jur, Automobiles and Other Vehicles, § 721; see *Baker v Close,* 204 NY 92).

The fourth error claimed is the trial court's charging the jury on "assumption of the risk" with respect to the decedent.

The court charged: "If you find that the deceased, Mrs. Franco, exposed herself to a dangerous condition on the roadway under the circumstances, stepping out from behind parked cars, and that she knew and fully appreciated that danger, but nevertheless voluntarily exposed herself to it, then she is deemed to have assumed the risk thereof and may not recover for any injuries she sustained in the accident or her consequent death as a result of such injuries." Again, no exception was taken by plaintiff's counsel and we are called upon to reverse in the interest of justice.

■■ "The doctrine of assumption of risk lies in the maxim *volenti non fit injuria.* Based as it is upon the plaintiff's assent to endure a situation created by the negligence of the defendant, it relieves the defendant from performing a duty which might otherwise be owing to the plaintiff. Where the plaintiff has assumed the risk of harm through the acts or omissions of the defendant, it *matters not that the plaintiff was free from contributory negligence.* In such case *no breach of duty* by the defendant is shown and consequently no negligence" (41 NY Jur, Negligence, § 49; emphasis supplied). Beyond peradventure the record herein does not admit of a charge on assumption of risk. As noted in the Comment to New York Pattern Jury Instructions relevant to assumption of risk: "A plaintiff to whom is owed a duty of reasonable care is not deemed to have assumed the risk unless he knows and fully appreciates the same * * * It is not sufficient that the risk was obvious or discoverable in the exercise of reasonable care and to charge assumption of risk in such a case is error. Failure to appreciate danger may constitute contributory negligence; it is not assumption of the risk, see 82 ALR2d 1218" (PJI 2:55, Comment).

■ The errors of the charge respecting unavoidable accident, assumption of the risk and violation of applicable sections of the city traffic regulations and the Vehicle and Traffic Law were so fundamental that this court would be remiss in not reversing and affording plaintiff a new trial. In effect, the trial court's errors swept plaintiff out of court and frustrated application of the doctrine of comparative negligence.

The circumstances in this case are such that, had not improper evidence been permitted, and had not improper, inapplicable and confusing instructions been given on the law, an untrammeled jury could easily have found that there was comparative negligence. As already noted, neither the doc-

trine of assumption of the risk nor that of unavoidable accident is demonstrated on this record. Accordingly, it must be concluded that the jury verdict is palpably against the weight of the credible evidence. The verdict totally in favor of defendants, i.e., finding them to be completely without fault, could not have been reached upon any fair interpretation of the evidence. We merely note in conjunction with this conclusion the fact that the testimony of the only witnesses to the accident produced at trial (other than the defendants who are parties to this litigation) was fully supportive of plaintiff's case.

Even assuming that each of the claimed errors (apart from the argument that the jury verdict is against the weight of the credible evidence) was not sufficient of itself to warrant a new trial, the cumulative effect of the errors is such that each obtained compelling prejudicial impact and the total effect deprived plaintiff of a fair trial.

Finally, the court's charge embodying the *Noseworthy* rule was extremely succinct: "It is well established that in a death action a plaintiff is not held to as high a degree of proof of the cause of action as when an injured plaintiff can himself or herself describe the occurrence upon which the action is based." No expansion relevant to the fact that this rule permits greater latitude in drawing an inference of negligence was enunciated. Indeed, the unreasonableness of the verdict herein is only highlighted by the fact that the *Noseworthy* rule applied to the occurrence herein *(Noseworthy v City of New York,* 298 NY 76).

Accordingly, the judgment of the Supreme Court, Bronx County (BLOUSTEIN, J.), entered March 21, 1978, after a jury trial, in favor of the defendants should be reversed, on the law, with costs and disbursements, to abide the event, and the matter remanded for a new trial.

BLOOM, J. P., MARKEWICH and ROSS, JJ., concur.

Judgment, Supreme Court, Bronx County, entered on March 21, 1978, reversed, on the law, and the matter remanded for a new trial, with $75 costs and disbursements of this appeal to abide the event.