JEROME H. MIKULA, Appellant, v WILLIAM DULIBA, Respondent.

Fourth Department, July 11, 1983

APPEARANCES OF COUNSEL

*Miserendino, Krull & Foley, P. C.* (*Walter P. Seegert* of counsel), for appellant.

*Cohen, Lombardo, Blewett, Fisher, Hite & Spandau* (*James N. Hite* of counsel), for respondent.

OPINION OF THE COURT

MOULE, J.

The question presented on this appeal is the applicable standard of care in a negligence action based upon a hunting accident.

At trial, the testimony of several witnesses established the manner in which the accident occurred. In late November, 1977 plaintiff went hunting on defendant's land where he had previously hunted without defendant's permission. The day was cold and overcast. The area of defendant's land, where plaintiff hunted, was hilly, wooded and covered with thick brush. At the time of the accident, plaintiff was on a sloping bank of a hill surrounded by a row of pine trees which limited visibility to 25 feet in all directions. To increase his field of vision to about 50 yards, he laid down on his stomach to look from underneath the tree branches. While in this position, he was hit in both legs with a single shotgun slug fired by defendant.

Defendant, licensed to hunt in 1977, was an experienced hunter of 28 to 30 years and had killed 15 or more deer from distances of up to 200 yards. Defendant testified that on the day of the accident he spotted a deer while walking up a roadway. He stalked it by circling around to the right. While circling, he saw it a second time. On the third sighting, defendant saw that it was a six to eight-point antlered deer, weighing approximately 120 to 150 pounds. At a distance of about 30 to 35 feet, it turned broadside to him, and he fired a shot. When firing, he was able to see eight to ten yards beyond the target. He lost sight of the deer but thought that he had hit it. Shortly after firing, he heard plaintiff screaming and looked for him. He was unable to see plaintiff until he was within 10 to 15 feet of him because of the heavy brush. Two members of the fire department, who came to plaintiff's aid, were also unable to see plaintiff until they were within 10 to 15 feet of him.

An environmental conservation officer testified that a hunter must attend a training course before obtaining a license. The course includes safety practices and procedures. One of these practices is positive identification of the target and background. The Department of Environmental Conservation recommends that a hunter secure the permission of the landowner before hunting on someone's property to insure that the landowner and other hunters know of his presence. In the officer's opinion, it would not be a good practice for a hunter to crawl around on his stomach in heavy brush. The officer also stated that, in his opinion, a shot taken from a distance of 30 to 50 feet with a sloping bank as a background would be safe.

At the close of the testimony, the jury was instructed, in part, as follows:

" 'Negligence' is lack of ordinary care; it is a failure to exercise that degree of care which a reasonably prudent person would have exercised under the same circumstances. It may arise from doing an act which a reasonably prudent person would not have done under the same circumstances or, on the other hand, from failing to do an act which a reasonably prudent person would have done under the same circumstances.

"Every hunter is under a duty to keep a proper lookout under the conditions then existing to see and be aware of what was in his view and to use reasonable care to avoid an accident. While due care under the circumstances is the rule, the degree of caution required to be exercised in specific situations varies with the time, place, and conditions involved, and with the risks reasonably to be apprehended. The care exercised must be commensurate with the known dangers. * * *

" 'Negligence' requires both a foreseeable danger of injury to another and conduct unreasonable in proportion to the danger."

Plaintiff maintains that a higher standard of care than ordinary prudence was required because the accident involved the use of an inherently dangerous instrumentality. He requested that the charge include the following quote from *Palsgraf v Long Is. R. R. Co.* (248 NY 339, 344):

"Some acts, such as shooting, are so imminently dangerous to any one who may come within reach of the missile, however unexpectedly, as to impose a duty of prevision not far from that of an insurer."

■ The instructions, as given, properly defined the standard of care as that degree of care which a reasonable man of ordinary prudence would exercise under the circumstances, commensurate with the apparent risk involved (see *Blanchard v Noteware*, 263 App Div 186; *Markiewicz v Thompson*, 220 App Div 311, app dsmd 246 NY 235; *Havas v Victory Paper Stock Co.*, 49 NY2d 381, 385-386; 5B Warren, NY Negligence — Instrumentalities, Firearms, § 1.01, p 775). The court pointed out that the care required to be exercised must be commensurate with the known dangers and risks reasonably to be foreseen (see *Caldwell v Village of Island Park*, 304 NY 268, 274; *Bennett v New York & Queens Elec. Light & Power Co.*, 294 NY 334, 337).

Although the language used in defining the standard of care sometimes seems to indicate that a higher or more exacting standard is being applied, the standard of care remains that of ordinary prudence under the circumstances; the degree of danger or risk involved is merely one of the circumstances to be considered in determining what ordinary care requires in any given instance (Prosser, Torts [4th ed], § 34, p 181; Ann., 26 ALR3d 561, 567, § 3). What may be deemed ordinary care under some circumstances becomes negligence under other circumstances, but the standard of ordinary or reasonable care remains the same (see *Caldwell v Village of Island Park, supra,* at p 274; *Hegarty v Railway Express Agency*, 126 NYS2d 107, 111, affd 282 App Div 871; Prosser, Torts [4th ed], § 31, p 149; 57 Am Jur 2d, Negligence, § 67, p 418).

The instruction properly defined this relationship between the standard of care and the risk reasonably to be foreseen. The jury was advised that, although "due care under the circumstances is the rule, the degree of caution required to be exercised in specific situations varies with * * * the risks reasonably to be apprehended" and that "[t]he care exercised must be commensurate with the known dangers". The standard of care required was given

further elaboration when the court related it to the duties of a hunter.

The language in *Palsgraf (supra)*, which plaintiff requested to be incorporated into the charge, further defines the relationship between risk and duty. It does not mandate that a higher standard of care be charged or that strict liability be imposed. Of course, certain activities, due to their abnormally dangerous nature, do give rise to strict liability (see, e.g., *Doundoulakis v Town of Hempstead*, 42 NY2d 440, 448; Restatement, Torts 2d, §§ 519, 520). These abnormally dangerous activities, however, generally include uncommon or unnatural uses of land as well as activities which are uncommon or inappropriate to the place where carried on and which pose a risk which cannot be eliminated by the exercise of reasonable care[*] (see, generally, Prosser, Torts [4th ed], § 78; Restatement, Torts 2d, § 520). Although firearms are dangerous instrumentalities (*Lichtenthal v Gawoski*, 44 AD2d 771), their use while hunting is not an abnormally dangerous activity which requires the imposition of strict liability (see *Blanchard v Noteware, supra; Markiewicz v Thompson, supra;* Prosser, Torts [4th ed], § 34, p 180).

Plaintiff also contends that the inclusion of an instruction on unavoidable accident was error. An unavoidable accident is an occurrence which is not intended and could not have been foreseen or prevented by the exercise of reasonable caution (Prosser, Torts [4th ed], § 29). A jury may be instructed as to unavoidable accident only if it could find that the accident resulted from an unknown cause or in an unexplained manner not occasioned by the negligence of either party (*DiLorenzo v Venosa*, 50 AD2d 603). It is error to refuse to charge unavoidable accident if the evidence could reasonably support such a finding (see *Romanelli v Gordon*, 39 AD2d 594; *Franco v Zingarelli*, 72 AD2d 211).

Defendant raises the possibility, substantiated by the testimony of the environmental conservation officer, that the bullet ricocheted off another object. Crediting this

---

[*] These are a few of several factors to be used in determining if an activity is abnormally dangerous; no one factor is determinative (*Doundoulakis v Town of Hempstead*, 42 NY2d 440, *supra*).

testimony, the jury could have found that the accident occurred in an unexplained manner not occasioned by any negligence. Since the evidence could reasonably support a finding of unavoidable accident, the court did not err in charging it and, indeed, would have been in error if it had refused to so charge (see *Romanelli v Gordon, supra*).

Lastly, plaintiff contends that the jury's verdict finding "no negligence on [defendant's] part" is against the weight of the evidence.

■ The testimony established that, at the time of the accident, plaintiff was lying on his stomach in thick brush and could not be seen from beyond 10 to 15 feet; that defendant was unaware of plaintiff's presence on his property since plaintiff admittedly hunted there without permission; that defendant spotted the deer three times before shooting and was able to identify it as a six to eight-point, 120 to 150 pound buck. Although plaintiff denied seeing the deer, the credibility of the witnesses was peculiarly for the jury to assess (*Fotiu v Ewing*, 90 AD2d 602). Accordingly, it may not fairly be said that the preponderance of the evidence in plaintiff's favor was so great that the verdict could not have been reached upon any fair interpretation of the evidence (*Slocum v Solomon*, 84 AD2d 946).

The judgment should be affirmed.

DILLON, P. J., CALLAHAN, DOERR and BOOMER, JJ., concur.

Judgment unanimously affirmed without costs.