CONTINENTAL BUILDING CORPORATION *et al.*, Plaintiffs-Appellants,
v. UNION OIL COMPANY OF CALIFORNIA, Defendant-Appellee.

First District (2nd Division)   No. 86—434

Opinion filed January 27, 1987.—Rehearing denied March 17, 1987.

Conklin & Adler, Ltd., of Chicago (Howard L. Lieber and Peter A. Quilici, of counsel), for appellants.

Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago (James J. O'Hagan, Carmel M. Cosgrave, and Eric L. Samore, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs, Continental Building Corporation, Continental Envelope Corporation, and Continental Envelope Corporation of Genoa (Continental), appeal from the circuit court's order dismissing count X of their amended complaint for failure to state a cause of action. Plaintiffs' amended complaint sought to recover damages for extensive damage to their real and personal property caused by a major fire which originated in a warehouse containing defendant's, Union Oil Company of California's (Union Oil), containers of solid and liquid chemicals which were "highly flammable, combustible and explosive."

Plaintiffs were owners of a complex of buildings located at 1301 West 35th Street, Chicago. Stored within that complex were various fixtures and personal property, including large quantities of paper goods owned by Continental. Prior to August 26, 1980, Union Oil arranged to have some of its chemical products stored at an independently owned warehouse located at 3615 South Iron Street, Chicago.

On or about August 26, 1980, a fire broke out at 3615 South Iron Street warehouse facility. The fire quickly spread to an adjacent building located at 3601 South Iron Street and then to Continental's property at 1301 West 35th Street.

Count X alleged that Union Oil was engaged in an ultrahazardous activity by storing highly flammable, combustible, and explosive solid and liquid chemical products in an unsuitable environment. Moreover, the complaint alleged that Union Oil had a duty to assure that such products were placed in safe and suitable storage containers and that Union Oil failed to fulfill this duty. Finally, Continental alleged that as a result of Union Oil's ultrahazardous activity, Continental's property became involved in a fire resulting in damages of $551,932.

Union Oil moved to dismiss count X with prejudice for failure to state a cause of action. After reviewing the briefs submitted by the parties and hearing oral argument, Judge O'Brien granted Union Oil's motion. Continental requested that the court's order be made final

and appealable. Judge O'Brien granted Continental's request.

On September 12, 1986, Union Oil filed a motion with this court requesting that the prayer in Continental's reply brief, seeking leave to amend count X to remedy any deficiencies in its allegations, be stricken and denied.

■■■ Initially, we address Union Oil's motion to strike Continental's prayer for relief in its reply brief. Supreme Court Rule 303c(2) requires that the notice of appeal specify "the relief sought from the reviewing court." Moreover, a party desiring to file an amended pleading should make it part of the record on appeal. If this is not done, a court of review is not in a position to say that justice would be done by granting leave to amend. (*Hassiepen v. Marcin* (1974), 22 Ill. App. 3d 433, 436, 318 N.E.2d 162.) In its notice of appeal, Continental failed to request that this court grant it leave to amend its complaint. Moreover, Continental failed to request such leave in the trial court. In fact, Continental specifically asked the trial judge to make his order final and appealable. In their reply brief, Continental requested this court allow plaintiffs to amend count X in the event this court should decide to affirm the trial court's decision. We grant Union Oil's motion to strike Continental's prayer to amend count X of its complaint because Continental failed to request such relief at the trial level.

The sole question on appeal is whether the trial court erred in dismissing count X of Continental's complaint alleging that Union Oil's activity of storing flammable substances was an ultrahazardous activity creating liability without fault.

■■ As this court has previously noted, most jurisdictions in this country have adopted the principle of *Rylands v. Fletcher* (1868), L.R. 3 H.L. 330, and impose strict liability on owners and users of land for harm resulting from abnormally dangerous activities and conditions. (*Ruggeri v. Minnesota Mining & Manufacturing Co.* (1978), 63 Ill. App. 3d 525, 528-29, 380 N.E.2d 445, citing W. Prosser, Torts sec. 78, at 505 (4th ed. 1971) and Restatement (Second) of Torts sec. 519 (1976).) The "rule" of *Rylands* is that "the defendant will be liable when he damages another by a thing or activity unduly dangerous and inappropriate to the place where it is maintained, in light of the character of that place and its surroundings." W. Prosser, Torts sec. 78, at 508 (4th ed. 1971).

■■ One of the activities to which the rule of *Rylands* has often been applied is the storing and use of explosives and flammable materials. *Ruggeri v. Minnesota Mining & Manufacturing Co.* (1978), 63 Ill. App. 3d 525, 528-29, 380 N.E.2d 445; see *Indiana Harbor Belt*

*R.R. Co. v. American Cynamid Co.* (N.D. Ill. 1981), 517 F. Supp. 314; *FitzSimons & Connell Co. v. Braun* (1902), 199 Ill. 390; see, *e.g., City of Joliet v. Harwood* (1877), 86 Ill. 110; *Opal v. Material Service Corp.* (1956), 9 Ill. App. 2d 433 (courts found that the use of explosive material, such as dynamite, in a residential area was intrinsically dangerous and gave rise to strict liability for the blaster).

In *Indiana Harbor Belt R.R. Co.*, a Federal court, applying Illinois law, held that shipping acrylonitrile, a hazardous and toxic substance, was an ultrahazardous activity that subjected the shipper to strict liability. The court reviewed Illinois cases dealing with ultrahazardous activities and noted that while Illinois cases had focused largely on blasting operations, they had not expressly limited the concept to this activity. (*Indiana Harbor Belt R.R. Co. v. American Cynamid Co.* (N.D. Ill. 1981), 517 F. Supp. 314, 317.) The court determined that the Illinois blasting cases stood for the proposition that, "[i]f an activity is inherently dangerous and harm naturally and probably results from it despite the exercise of utmost care, liability will result." (517 F. Supp. 314, 317.) Consequently, the court found that Illinois law was in accord with *Rylands* and applied the Second Restatement's approach in determining that defendant was strictly liable. 517 F. Supp. 314, 317.

Section 519 of the Restatement (Second) of Torts (1976) sets forth the general principle that "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Section 520 sets forth the following factors to be considered in defining an abnormally dangerous activity: (a) whether the activity involves a high degree of risk of some harm to the person, land, or chattels of others; (b) whether the gravity of the harm which may result from it is likely to be great; (c) whether the risk cannot be eliminated by the exercise of reasonable care; (d) whether the activity is not a matter of common usage; (e) whether the activity is inappropriate to the place where it is carried on; and (f) the value of the activity to the community.

The Federal court in *Indiana Harbor Belt R.R. Co. v. American Cynamid Co.* (N.D. Ill. 1981), 517 F. Supp. 314, correctly interpreted Illinois law (see *Fallon v. Indiana Trail School* (1986), 148 Ill. App. 3d 931). We hold that the facts alleged in the instant case are inapposite. In *Indiana Harbor Belt*, defendant was the manufacturer of an admittedly hazardous and toxic substance. Defendant arranged to have a freight car containing the substance sent to Indiana Harbor Belt Railway's freight yard before transporting the car to New Jer-

sey. At the freight yard, substantial amounts of acrylonitrile leaked from the freight car. There was extensive damage to property, equipment, and the water supply over a two-mile area. Moreover, the spill resulted in the evacuation of 3,000 people from their homes and interference with railroad operations for a substantial period of time.

Defendants argued that Illinois case law had limited the ultrahazardous-activity concept to cases involving blasting or explosives and it had not been extended to the circumstances of their case. They argued that while acrylonitrile is a hazardous substance, strict liability could not be applied unless it is a hazardous activity. Yet, plaintiff argued that shipping acrylonitrile was an inherently dangerous activity, both because of the characteristics of the chemical and the type of equipment upon which it was transported. The court concluded that plaintiff's complaint stated a cause of action because it believed that, as in the blasting cases, defendant acted "for his purposes and profit" in introducing the peril in the community. *Indiana Harbor Belt R.R. Co. v. American Cynamid Co.* (N.D. 1981), 517 F. Supp. 314, 317.

■ In the instant case, plaintiffs argue that the chemical products stored at the warehouse by Union Oil included "hundreds, if not thousands, of drums containing highly flammable substances including napthas [*sic*], solvents and alcohols." Plaintiffs further contend that "[m]any of these stored chemicals had extremely low flash points permitting any escaping vapors to ignite at very low temperatures, triggering a chain reaction of ignitions of other Union Oil chemicals stored at the warehouse." Finally, plaintiffs assert that "[t]he warehouse facility itself, was located in an urban, mixed commercial area containing a large number of factories and other warehouses." However, as defendant pointed out in his brief, Continental failed to include the above alleged facts in count X of their complaint. A complaint which fails to allege facts, the existence of which are necessary to enable plaintiff to recover, does not state a cause of action, and its deficiency may not be remedied by liberal construction or argument. *Belmar Drive-In Theatre Co. v. Illinois State Highway Com.* (1966), 34 Ill. 2d 544, 548-49, 216 N.E.2d 788.

■ We hold that Continental failed·to allege sufficient facts showing that storing containers of highly flammable solid and liquid chemicals in the subject warehouse was an abnormally dangerous activity. As Continental has emphasized in its brief, courts applying *Rylands* and the Restatement (Second) of Torts sec. 519—20 (1976) give great consideration to the appropriateness of the activity to the place where it is maintained, in light of the character of the place and its surroundings. (See *Rylands v. Fletcher* (1868), L.R. 3 H.L. 330, 341

(strict liability only applies when damage arises from a "non-natural" use of the land by a defendant); *Yommer v. McKenzie* (1969), 255 Md. 220, 227, 257 A.2d 138, 140-41 (operation of a gas station, though not a particular danger to the community, becomes one when a large gasoline tank is placed adjacent to a family well from which a family must draw its water); W. Prosser, Torts sec. 78, at 508 (4th ed. 1971); Restatement (Second) of Torts sec. 520, comment *j* (1976) (while blasting or placing a large storage tank of gasoline in a desert area, far from human habitation, may not create an abnormal danger, doing the same in the midst of a city will).) Yet, in the instant case, there are no facts alleged which contend that the warehouse was in the midst of a populated area, endangering community residents. Indeed, even in argument, Continental states that the warehouse was located in an "urban, mixed commercial area containing a large number of factories and other warehouses." Unlike *Indiana Harbor Belt*, the instant warehouse was not in a residential area and the fire did not cause evacuation of thousands of people from their homes. Therefore, it is evident that Continental failed to allege sufficient facts showing that Union Oil's chemicals were stored in an inappropriate place given its surroundings. As such, we affirm the trial court's order dismissing count X of Continental's amended complaint.

Affirmed.

SCARIANO, P.J., and BILANDIC, J., concur.