GERALD MILLER, Plaintiff-Appellant, v. CIVIL CONSTRUCTORS, INC., d/b/a Civil Constructors, *et al.*, Defendants-Appellees (Sam Volkert, as Sheriff of Stephenson County, *et al.*, Defendants).

Second District    No. 2—94—1109

Opinion filed May 5, 1995.

James D. Sparkman, of Vella, Sparkman & Altamore, P.C., of Rockford, for appellant.

D. Kendall Griffith, Bruce L. Carmen, and Thomas H. Boswell, all of Hinshaw & Culbertson, of Chicago, for appellee Civil Constructors, Inc.

Christopher J. Cocoma and Donald Q. Manning, both of McGreevy, Johnson & Williams, P.C., of Rockford, for appellee City of Freeport.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Gerald Miller, appeals from the orders of the circuit court of Stephenson County which dismissed the strict liability counts of his complaint against defendants, Civil Constructors, Inc., d/b/a Civil Constructors (Constructors) (count I), and the City of Freeport (City) (count V). Counts I and V of the complaint filed October 22, 1992, alleged essentially that defendants were strictly liable for injuries to plaintiff arising from purportedly "ultrahazardous" activity for which defendants were legally responsible either because of their control of the premises or their discharge of firearms. In each instance, plaintiff stated that the defendant, through its officers, agents or employees, knew (alternatively in count I, "or in the exercise of reasonable care should have known") that "discharging firearms is an ultrahazardous, highly dangerous activity" which was the proximate cause of plaintiff's injuries. The complaint averred that plaintiff was injured when a stray bullet ricocheted during the course of firearm target practice in a nearby gravel pit and caused him to fall from a truck. There is no legal cause of action available to plaintiff under a theory of strict liability. We affirm the orders of the circuit court.

The record shows that the court struck from the complaint references to the defendant Freeport police department and granted summary judgment, without opposition, to Sam Volkert and the Stephenson County sheriff's department; none of these defendants are parties to the appeal. Count IV, alleging negligence by the City, remained pending. We have appellate jurisdiction under Supreme Court Rule 304(a). Official Reports Advance Sheet No. 26 (December 22, 1993), R. 304(a), eff. February 1, 1994; see *Freeman v. White Way Sign & Maintenance Co.* (1980), 82 Ill. App. 3d 884, 891.

The issue before us is whether, consonant with Illinois law, the trial court properly dismissed the counts where plaintiff attempted to state a cause of action premised on a theory of strict liability by asserting that the discharge of firearms in a quarry shooting range is an ultrahazardous activity. Under the circumstances presented, we hold as a matter of law that the discharge of firearms is not an ultrahazardous activity which would support plaintiff's strict liability claims.

■ A section 2—615 motion to dismiss for failure to state a cause of action (735 ILCS 5/2—615 (West 1992)) attacks the legal sufficiency of the complaint, and the relevant inquiry is whether sufficient facts are contained in the pleadings which, if proved, could entitle the plaintiff to relief. (*OnTap Premium Quality Waters, Inc. v. Bank of Northern Illinois* (1994), 262 Ill. App. 3d 254, 258.) Plaintiff's complaint is legally insufficient to state a cause of action on the basis of strict liability.

The precise issue raised appears to be one of first impression for this court. Unfortunately, plaintiff's counsel has failed to provide much in the way of legal authority or even persuasive legal analysis to show that the discharge or use of firearms must be classified as an ultrahazardous activity (sometimes called abnormally dangerous activity) which demands the imposition of strict liability on a defendant. Plaintiff's counsel relies either on *obiter dictum* or he quotes matters out of context from the cases cited. In view of the dearth of authority on the subject, the importance of the issue, and the adequacy of defendants' briefs, we will fully address the question presented.

The doctrine of strict liability, sometimes called absolute liability, has its genesis in the English rule of *Rylands v. Fletcher* (1868), 3 H.L. 330, wherein strict liability was imposed on the defendant owners of land for harm resulting from the abnormal or nonnatural use of the defendants' land which arose when water from defendants' reservoir flooded the adjoining mine of the plaintiff. Subsequent decisions interpreted the rule to be confined to things or activities which were "extraordinary" or "exceptional" or "abnormal" so that there was some special use bringing with it increased danger to others. (W. Keeton, Prosser & Keeton on Torts § 78, at 545-46 (5th ed. 1984) (hereinafter Prosser).) From the decisions of the English courts, the "rule" of *Rylands* which has emerged is that "the defendant will be liable when he damages another by a thing or activity unduly dangerous and inappropriate to the place where it is maintained, in the light of the character of that place and its surroundings." Prosser, § 78, at 547-48.

Most jurisdictions in this country have adopted the rule of *Rylands* to impose strict liability on owners and users of land for harm resulting from abnormally dangerous conditions and activities. (*Ruggeri v. Minnesota Mining & Manufacturing Co.* (1978), 63 Ill. App. 3d 525, 528. ) The best-known applications of the *Rylands* rule imposing strict liability on a defendant involve the storing and use of explosives and flammable materials. See *Continental Building Corp. v. Union Oil Co.* (1987), 152 Ill. App. 3d 513, 515-16 (cases cited); *Opal v. Material Service Corp.* (1956), 9 Ill. App. 2d 433 (use of explosive such as dynamite in residential area was intrinsically dangerous and gave rise to strict liability for the blaster regardless of degree of care or skill exercised in using the explosive).

■ Illinois has recognized strict liability principally in two instances: (1) when, under certain circumstances, a defendant introduces a product into the community which is unreasonably dangerous to the user, consumer, or to his property (product liability cases) (*Martin v. Harrington & Richardson, Inc.* (7th Cir. 1984), 743 F.2d 1200, 1202); and (2) when a defendant engages in ultrahazardous or abnormally dangerous activity as determined by the courts, giving particular consideration, *inter alia,* to the appropriateness of the activity to the place where it is maintained, in light of the character of the place and its surroundings (*Continental,* 152 Ill. App. 3d at 516-17). See *Riordan v. International Armament Corp.* (1985), 132 Ill. App. 3d 642 (distinguishing product liability from ultrahazardous activity liability); see also *Indiana Harbor Belt R.R. Co. v. American Cyanamid Co.* (N.D. Ill. 1981), 517 F. Supp. 314 (concluding that transporting acrylonitrile, a dangerous and toxic substance, was inherently dangerous or ultrahazardous activity so that complaint stated cause of action in strict liability under Illinois law).

We are concerned here only with determining as a matter of law whether the use of firearms is an ultrahazardous activity giving rise to strict liability. (*Fallon v. Indian Trail School, Addison Township School District No. 4* (1986), 148 Ill. App. 3d 931 (holding as a matter of law that use of trampoline is not abnormally dangerous instrumentality); *Clark v. City of Chicago* (1980), 88 Ill. App. 3d 760, 763-64 (demolition held ultrahazardous as a matter of law).) Plaintiff concedes that ordinarily the manufacture or the sale of nondefective handguns has been held *not* to be an ultrahazardous activity. (*Riordan,* 132 Ill. App. 3d at 649-50, citing with approval *Martin v. Harrington & Richardson, Inc.* (7th Cir. 1984), 743 F.2d 1200.) Nevertheless, in a misleading argument, plaintiff quotes out of context a fragment of a sentence from *Riordan* (italicized in the quotation below) in urging this court to find the use of firearms is ultrahazardous. The complete quotation of the sentence is this:

"*As it is not the manufacture and sale of handguns that is ultrahazardous, but their use or misuse* that is alleged in plaintiffs' claim here, the plaintiffs have no grounds for recovery under the doctrine of strict liability for engaging in ultrahazardous activities. To accept plaintiffs' contention, we would be considerably extending the ultrahazardous activity theory far beyond its accepted meaning." (Emphasis added.) (*Riordan*, 132 Ill. App. 3d at 649.)

The statement from *Riordan* clearly contradicts plaintiff's position.

Admittedly, there is *dictum* in *Martin* which suggests that the use of handguns might be considered an ultrahazardous activity. However, that court actually decided that, under Illinois law, the sale of a nondefective handgun was not an ultrahazardous activity and to decide otherwise would be unprecedented. (*Martin*, 743 F.2d at 1203 (where court stated in *dictum*, "If plaintiffs were claiming that the *use* of a handgun was an ultrahazardous activity the argument would clearly fit within the parameters of Illinois law") (emphasis in original).) Yet, there is no basis for the *dictum* in *Martin*, and of course this court is not bound by that decision. Equally unavailing to plaintiff is his improvident citation to matters out of context from an old *negligence* case, *Harrison v. Allen* (1913), 179 Ill. App. 520. In commenting on the instructions used at that time in the case of the negligent firing of a hunting weapon, the *Harrison* court noted in passing that it had been stated that firearms were "extraordinarily" dangerous and required "extraordinary" care to prevent injury. The court actually held that it was reversible error to instruct that the burden of proof throughout the case was the plaintiff's and to refuse instructions correctly stating the law as to the burden on defendant to prove that the gun was not negligently discharged by him. (*Harrison*, 179 Ill. App. at 523-24.) *Harrison* clearly does not support plaintiff's position.

Before we answer the question presented, we first summarize briefly what we believe is the current state of the law in this area. Plaintiff has not cited, nor have we found, any Illinois case holding that the use of a firearm which results in injury to a plaintiff is an ultrahazardous activity requiring the imposition of strict liability. Although the guns or firearms have been labeled dangerous instrumentalities (see *Teter v. Clemens* (1985), 131 Ill. App. 3d 434, 438; *Mikula v. Duliba* (1983), 94 A.D.2d 503, 507-08, 464 N.Y.S.2d 910, 913), it does not automatically follow that courts must then charge a defendant with strict liability for the use of firearms which results in harm to a plaintiff. Indeed, the prevailing rule which we have discovered in our own research is that the use of firearms ordinarily

does not present a question of strict liability premised on ultrahazardous activity; rather, it ordinarily presents a question of negligence or possibly of wilful and wanton conduct. See *Junker v. Ziegler* (1986), 113 Ill. 2d 332; *Washington v. Williams* (1991), 215 Ill. App. 3d 607 (wilful and wanton conduct); *Harrison v. Allen* (1913), 179 Ill. App. 520 (negligence); *Jacoves v. United Merchandising Corp.* (1992), 9 Cal. App. 4th 88, 11 Cal. Rptr. 2d 468 (no ultrahazardous activity warranting imposition of absolute liability, but highest standard of due care applied); *Reida v. Lund* (1971), 18 Cal. App. 3d 698, 96 Cal. Rptr. 102 (leaving rifle accessible was issue of negligence; use of firearms not ultrahazardous activity resulting in imposition of absolute liability); *Mikula v. Duliba* (1983), 94 A.D.2d 503, 507-08, 464 N.Y.S.2d 910, 913 (although firearms are dangerous instrumentalities, their use while hunting is not abnormally dangerous activity requiring imposition of strict liability); see also *Moore v. R.G. Industries, Inc.* (9th Cir. 1986), 789 F.2d 1326, 1328 (under California law, use of handguns is not ultrahazardous activity for which strict liability may be imposed).

The frequently stated standard of care applied in many jurisdictions concerning the use of firearms is the duty to exercise ordinary care commensurate with the peculiar circumstances of the case. (Annot., 26 A.L.R.3d 561, 567 (1969).) This is a negligence standard which is incompatible with the theory of strict liability. One instructive commentary states:

> "In determining the degree or measure of care required to avoid injuring another by the use or possession of a particular dangerous instrumentality, much depends upon the nature of the instrumentality, the circumstances which surround its maintenance and use, and the time and place of its use. *** Ordinary care as applied to use of a dangerous instrumentality, however, generally imports the rule that the care exercised must be proportionate to the danger, and hence ordinary care in regard to a dangerous instrumentality necessarily implies the requirement of a great or high degree, if not the greatest or highest degree, of care." 57A Am. Jur. 2d *Negligence* § 313 (1989).

A similar standard is applied to the use and handling of a firearm. The degree of care to be exercised is often stated as "a high degree of care" and is more often defined as "such care as is commensurate with the dangerous nature of the firearm in the circumstances of the particular case" so that "one who has in his possession or under his control an instrumentality exceptionally dangerous in character is bound to take exceptional precautions to prevent an injury thereby." 79 Am. Jur. 2d *Weapons & Firearms* § 36 (1975); see,

*e.g., Seabolt v. Cheesborough* (1972), 127 Ga. App. 254, 193 S.E.2d 238 (in hunting rifle accident, ordinary care is care and diligence which every prudent man would exercise under similar circumstances and like surroundings); *Riste v. Helton* (1984), 139 Mich. App. 404, 362 N.W.2d 300 (owner of dangerous instrumentality such as gun must exercise high degree of care when using gun or authorizing use); *Hatfield v. Gracen* (1977), 279 Or. 303, 567 P.2d 546 (standard of due care in firing gun at suspected robber); *Everette v. City of New Kensington* (1978), 262 Pa. Super. 28, 396 A.2d 467 (extraordinary care is reasonable care when person is in possession of loaded firearm).

In Illinois, the standard of ordinary care in a negligence case is the care which a reasonably careful person would use under the circumstances presented; it is ordinarily a question for the trier of fact. (*Fugate v. Sears, Roebuck & Co.* (1973), 12 Ill. App. 3d 656, 670.) This standard or degree of care is evidently a flexible one which varies according to the particular circumstances. Imposing a duty of ordinary care, even where it may become a high degree of care under the particular circumstances, is quite different from imposing strict or absolute liability by classifying the activity ultrahazardous. Our review of the authorities thus discloses that the discharge of firearms resulting in injury ordinarily presents a question of negligence and that the standard of care is ordinary care—one which may be equated to a high degree of care because of the particular circumstances presented.

We return to the threshold question whether the use of firearms ought to be classified as an ultrahazardous activity. This type of inquiry is a question of law that we believe will be subjected to more rigorous, disciplined, and consistent analysis if we adopt the use of the Restatement principles and factors discussed, or at least implicitly considered, in prior decisions. (See *Continental Building Corp. v. Union Oil Co.* (1987), 152 Ill. App. 3d 513, 516; *Fallon*, 148 Ill. App. 3d at 934; Restatement (Second) of Torts §§ 519, 520 (1977); see also *Martin v. Harrington & Richardson*, 743 F.2d at 1203.) We expressly adopt the use of the Restatement principles and factors as an aid in deciding this type of question.

■ Section 519 of the Restatement states the general principle that "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." (Restatement (Second) of Torts § 519 (1977).) Section 520 of the Restatement sets forth several factors which we will consider in determining whether an activity is abnormally dangerous (ultrahazardous):

"(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes." Restatement (Second) of Torts § 520 (1977).

While all of these factors are important and should be considered, ordinarily the presence of more than one factor, but not all of them, will be necessary to declare the activity ultrahazardous as a matter of law so as to hold the actor strictly liable. The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability even though the activity is carried on with all reasonable care. (Restatement (Second) of Torts § 520, Comment *f*, at 37-38 (1977).) Considerations of public policy also enter prominently into the decisions by our courts to impose strict liability (at least in product liability cases). (See *Indiana Harbor Belt R.R. Co. v. American Cyanamid Co.* (N.D. Ill. 1981), 517 F. Supp. 314, 318, citing *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 619.) Particular consideration is also given to the appropriateness of the activity to the place where it is maintained, in light of the character of the place and its surroundings under the *Rylands* rule. *Continental Building*, 152 Ill. App. 3d at 517.

■ The use of guns or firearms, even though frequently classified as dangerous or even highly dangerous, is not the type of activity that must be deemed ultrahazardous when the above-stated criteria are taken into consideration. First, the risk of harm to persons or property, even though great, can be virtually eliminated by the exercise of reasonable or even "utmost" care under the circumstances (see *Mikula v. Duliba*, 94 A.D.2d at 406-08, 464 N.Y.S.2d at 912-13). The doctrine of strict or absolute liability is ordinarily reserved for abnormally dangerous activities for which no degree of care can truly provide safety. There is a clear distinction between requiring a defendant to exercise a high degree of care when involved in a potentially dangerous activity and requiring a defendant to insure absolutely the safety of others when engaging in ultrahazardous activity. *Nelson v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 655, 667.

Second, the use of firearms is a matter of common usage and the harm posed comes from their misuse rather than from their inherent nature alone (see *Moore*, 789 F.2d at 1328). Third, the activity in this case was carried on at a firing range in a quarry located somewhere near the City of Freeport. We assume that the location was appropriate for such activity in the absence of further factual allegations in the complaint particularly describing the area as inappropriate for the target practice. Finally, the target practice is of some social utility to the community; this weighs against declaring it ultrahazardous where the activity was alleged to have been performed by law enforcement officers apparently to improve their skills in the handling of weapons.

In light of the above considerations, we conclude that plaintiff's allegations are legally insufficient to show that the activity should be declared ultrahazardous so as to subject defendants to claims premised on a theory of strict liability. See *Continental*, 152 Ill. App. 3d at 517-18; *Fallon*, 148 Ill. App. 3d at 934-35.

The judgment of the circuit court of Stephenson County is affirmed.

Affirmed.

RATHJE and HUTCHINSON, JJ., concur.